

**Andrew M. Howard**
Bank of America Plaza
901 Main Street, Suite 3300
Dallas, TX, 75202
214-593-9133 Telephone
214-593-9111 Facsimile

March 28, 2017

Honorable Edgardo Ramos                                    FILED ELECTRONICALLY
United States District Judge                               VIA ECF
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

> Re:   *Phoenix Ancient Art, S.A., et al. v. J. Paul Getty Trust, et al.,*
>       United States District Court, Southern District of New York,
>       Case No. 17-cv-00241-ER

Dear Judge Ramos:

This firm represents the Plaintiffs. We write in response to Defendant Livio Russo's request for a pre-motion conference under Fed.R.Civ.P. 12(b)(2), (5), and (6). Dkt. 39.  Livio Russo was properly served, is subject to the Court's jurisdiction, and is personally liable for his conduct. Any motion to dismiss the Complaint should be denied.

**Background.** The Complaint alleges a coordinated effort by the Defendants to deprive Plaintiffs of their rights to a commission based upon any transaction involving the J. Paul Getty Museum ("Getty") and the Torlonia family involving the sale, lease, or exhibition of the family's unique collection of Greek and Roman statues (the "Torlonia Collection"). *See* Dkt.1.

Livio and his brother, Arturo, "engage in multiple high-dollar coin auctions on a yearly basis," including "the New York International Numismatic Convention" and "sold millions of dollars of historical coins in New York." *Id.* ¶ 47. The Russos knew Electrum through a shared interest in coins and contacted Electrum in 2010 about the sale of the Torlonia Collection. *Id.* ¶48. The Russos represented to Electrum they believed only Electrum could find a buyer for the collection. *Id.* ¶ 50. They agreed with Plaintiffs to jointly market the Torlonia Collection. Thereafter, Plaintiffs spent years cataloguing and researching the provenance of the Collection, and developed relationships with the appropriate authorities, all in reliance on the Russos' representations that only Plaintiffs would have the opportunity to do so. *Id.*  ¶¶ 51-55.

In 2013, Defendant Potts ("Potts") executed a Non-Circumvention Agreement ("NCA") that protected Plaintiffs' trade secrets and confidential information. *Id.* ¶¶ 57-67. The Russos' role was as facilitator between Plaintiffs in New York and the Torlonia family. As facilitators, the Russos participated in and gained firsthand knowledge of all communications between the Getty and the Torlonia family, all of which were centered in New York. *Id.* ¶¶ 78, 79, 83, 86, 78.

Honorable Edgardo Ramos
March 28, 2017

The Russos were aware of the NCA and sent the NCA to the Torlonia family. *Id.* ¶ 83. In May of 2015, however, Livio requested to directly contact the Getty. *Id.* ¶ 106. Plaintiffs reminded him that doing so would violate the NCA, that he had a copy of the NCA, and that all communications were required to go through Plaintiffs. *Id.* A few months later, however, Defendants ceased discussing the Torlonia Collection with Plaintiffs. *Id.* ¶ 117.

Through the remainder of 2015 and first half of 2016, Potts, the Getty, and the Russo brothers colluded to access the Torlonia Collection in violation of the NCA. *Id.* ¶¶ 119-121. A deal was struck for the Getty Museum's exhibition of the Collection, without Plaintiffs' participation or consent, which attempted to cut Plaintiffs out of any compensation for their years of work. *Id.* ¶¶ 123-136. Arturo conceded that the Getty and Torlonia family were put in contact by the Russo brothers, in clear violation of the NCA. *Id.* ¶ 137. Defendants have profited from Plaintiffs' work without compensation to the Plaintiffs in violation of Plaintiffs' rights.

**Livio was properly served.** Livio cites an out-of-circuit case to state "service within Italy is not effective when performed by a private mail service."[1] To the contrary, that case holds that mail service to Italy performed by the Clerk of Court—as here—"effectuat[es] proper service."[2] Courts here agree.[3]

**The Court has personal jurisdiction over Livio.**[4] Livio asserts "at the motion to dismiss stage plaintiffs bear the burden of proving personal jurisdiction." That is incorrect. "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."[5] Only a "prima facie showing" is required.[6]

Plaintiffs allege facts supporting this Court's jurisdiction over Livio Russo. Livio does not deny that he sold millions of dollars of antique coins into New York, but claims those activities were on behalf of a corporate entity and thus cannot establish jurisdiction. That is an incorrect statement of law; "the fiduciary shield doctrine does not apply to any of the provisions of New York's long-arm statute."[7] In any event, Livio maintains agents in, solicits business in, and may maintain bank accounts or other property in New York sufficient to satisfy CPLR § 301.

Livio "transacts business within the state" under CPLR § 302(a)(1). He sells millions of dollars of antiquities in New York, an activity related to those alleged in the Complaint.[8] The NCA is a New York contract and the information "allegedly used by [Livio] to tortuously interference with

---

[1] *The Knit With v. Knitting Fever, et al.,* No. 8-cv-4221, 2010 WL 2788203 (E.D. Pa. July 23, 2010).

[2] *Id.* at *7; *see also* Dkt. 34 (Clerk's Certificate of Service).

[3] *Ackermann v. Levine*, 788 F.2d 830, 838-39 (2d Cir. 1986); *G.A. Modefine, S.A. v. Burlington Coat Factory Warehouse Corp.*, 164 F.R.D. 24, 25-26 (S.D.N.Y. 1995).

[4] Livio's arguments largely parrot the contentions raised by his brother Arturo (Dkt. 25), and fail for the same reasons. For purposes of brevity and to avoid repetition where possible, Plaintiffs incorporate herein the arguments and authority contained in their response to Arturo's contentions (Dkt. 30).

[5] *Metro. Life Ins., Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996).

[6] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

[7] *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988).

[8] *Antaeus Enter's, Inc. v. SD-Barn Real Estate, LLC*, 396 F. Supp. 2d 408, 410 (S.D.N.Y. 2005); *Andy Stroud, Inc. v. Brown*, No. 08-civ-8246 (HB), 2009 WL 539863, at *4 (S.D.N.Y. Mar. 4, 2009).

Honorable Edgardo Ramos
March 28, 2017

[Plaintiffs'] contract with [the Getty] was gained from and flowed to [Livio] from his business activity in New York."[9] CPLR § 302(a)(1) is thus satisfied.

Livio is subject to jurisdiction under § 302(a)(3) for committing tortious acts that caused injury in New York. While Livio cites cases discussing only financial injury occurring in New York insufficient for jurisdiction, the "situs of injury" test is applied differently to Plaintiffs' causes of action. The situs of injury for misrepresentation, unfair competition, inducement, and trade secret misappropriation claims are where the property is misappropriated, where the plaintiff lost business, or where the plaintiff received the misrepresentation.[10] The situs of injury for each of these torts was in New York, where Plaintiffs maintained their intellectual property, executed a New York contract, received Livio's misrepresentations, and lost sales and customers. These facts, especially in light of Livio's regular business activities in New York and frequent contacts with Plaintiffs in New York, satisfies § 302(a)(3) jurisdiction.

Moreover, FRCP 4(k)(2) provides an additional basis for this Court's personal jurisdiction over Livio under the DTSA (Count 10). Livio misstates the law when he claims that Rule 4(k)(2) requires satisfaction of a general jurisdiction test; rather, a showing of specific jurisdiction is sufficient to establish jurisdiction.[11] Here, Livio has not only transacted significant business in the United States through various multimillion dollar coin auctions but also has specifically communicated with and travelled to the United States relating to the transaction with the Getty sufficient to demonstrate specific jurisdiction. *See, e.g.*, ¶ 113 (alleging meeting between Potts, the Getty, Livio, and the Torlonia family in Los Angeles).

If the Court requires further evidence, Plaintiffs request jurisdictional discovery.[12]

**Plaintiffs have sufficiently stated a claim against Livio.** Livio perfunctorily and without citation lists a variety of purportedly missing allegations relevant to a 12(b)(6) motion. Even the subset of facts cited in the introduction section of this letter would defeat that motion. But if Livio is permitted to file a motion to dismiss on this sparse showing, Plaintiffs will respond to those detailed challenges in its opposition.

We appreciate the Court's attention to this matter and welcome the opportunity to address these issues with the Court.

---

[9] *Southridge Capital Mgmt., LLC v. Lowry*, 188 F. Supp. 2d 388, 398 (S.D.N.Y. 2002); *see also Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005).

[10] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999) (misappropriation); *Symmerta Pty Ltd. v. Human Facets, LLC*, No. 12-civ-8857 (SAS), 2013 WL 2896876 (June 13, 2013) (unfair competition); *Park West Galleries, Inc. v. Franks*, No. 12-civ-3007 (CM), 2012 WL 2367040 (June 20, 2012) (inducement); *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197 (1978) (trade secret); *Penguin Group (UAS) Inc. v. Am. Buddha*, 16 N.Y.3d 295 (2011) (trade secrets).

[11] *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 128 (2d Cir. 2008).

[12] *Int'l Diamond Imps., Inc. v. Med Art, Inc.*, No. 15-CV-4045 (KMW), 2016 WL 1717217, at *2 (S.D.N.Y. Apr. 27, 2016). Discovery is particularly appropriate here because of Defendants' concealed acts.

Honorable Edgardo Ramos
March 28, 2017

Respectfully,

Andrew M. Howard

AMH:ach