**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHOENIX ANCIENT ART, S.A., PETRARCH LLC a/k/a ELECTRUM, and REGULUS INTERNATIONAL CAPITAL CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> J. PAUL GETTY TRUST, J. PAUL GETTY MUSEUM, TIMOTHY POTTS, LIVIO RUSSO, and ARTURO RUSSO, <br><br> Defendants. | CASE NO. 1:17-CV-241-ER <br><br> **NOTICE OF MOTION AND MOTION OF DEFENDANTS J. PAUL GETTY TRUST, J. PAUL GETTY MUSEUM, and TIMOTHY POTTS TO DISMISS COUNTS 2-10 OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:  Hon. Edgardo Ramos <br> Hearing Date:  None Set <br><br> [Fed. R. Civ. P. 12(b)(6)] |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

NOTICE OF MOTION AND MOTION ............................................................... vi

STATEMENT OF REQUESTED RELIEF............................................................ vi

STATEMENT OF ISSUES TO BE DECIDED ................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES .......................................1

FACTUAL BACKGROUND .................................................................................3

I.      The Parties ..................................................................................................3

        A.      The Plaintiffs.................................................................................3

        B.      The Defendants .............................................................................3

II.     Factual History............................................................................................4

        A.      Phoenix's Failed Effort to Broker a Sale of the Torlonia Collection ....................4

        B.      The Torlonia Family Strikes a Deal with the Italian Government.........................7

        C.      Plaintiffs File Suit ........................................................................8

LEGAL STANDARD.............................................................................................9

ARGUMENT ........................................................................................................10

I.      Plaintiffs' Tort Claims Fail as a Matter of Law .......................................10

        A.      All of Plaintiffs' Tort Claims Fail Because Such Claims Are Duplicative of Plaintiffs' Claims for Breach of Contract ........................10

        B.      Plaintiffs' Tort Claims Fail on Their Own Merits .................15

        C.      Plaintiffs Fail to Plead that Dr. Potts Committed Any Independent Torts ...........18

II.     Plaintiffs' Quasi-Contractual Claims Fail................................................19

III.    Plaintiffs Fail to Plead an Independent DTSA Claim.................................22

IV.     Plaintiffs Fail to Plead Any Cognizable Claims on Behalf of Regulus ............................24

CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A Star Group, Inc. v. Manitoba Hydro*,
No. 13 Civ. 4501(PAC), 2014 WL 2933155 (S.D.N.Y. June 30, 2014), *aff'd*,
621 F. App'x 681 (2d Cir. 2015) (summary order) ......................................................12, 14, 23

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
637 F. Supp. 2d 185 (S.D.N.Y. 2009) ....................................................................................21

*ARI & Co. v. Regent Int'l Corp.*,
273 F. Supp. 2d 518 (S.D.N.Y. 2003) ....................................................................................21

*Arista Techs., Inc. v. Arthur D. Little Enters., Inc.*,
125 F. Supp. 2d 641 (E.D.N.Y. 2000) ....................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................9, 10

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
No. 14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) ...........................17, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................25

*Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
No. 05 CV 6882(GBD), 2009 WL 362118 (S.D.N.Y. Feb. 9, 2009) ....................................20

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*,
98 F.3d 13 (2d Cir. 1996)....................................................................................................16

*Carmania Corp., N.V. v. Hambrecht Terrell Int'l*,
705 F. Supp. 936 (S.D.N.Y. 1989) ...............................................................................10, 11, 15

*In re Chateaugay Corp.*,
10 F.3d 944 (2d Cir. 1993)..................................................................................................10

*Conway v. Icahn & Co.*,
16 F.3d 504 (2d Cir. 1994)...................................................................................................24

*Coty, Inc. v. L'Oreal S.A.*,
320 F. App'x 5 (2d Cir. 2009) .............................................................................................19

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)............................................................................................19, 21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) .........................................................................11, 14, 21

*Finley v. Giacobbe*,
    79 F.3d 1285 (2d Cir. 1996) ......................................................................................................18

*Haining Zhang v. Schlatter*,
    557 F. App'x 9 (2d Cir. 2014) .......................................................................11, 12, 14, 15

*Harris v. Provident Life & Accident Ins. Co.*,
    310 F.3d 73 (2d Cir. 2002) .......................................................................................................21

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) ...........................................................................................10, 16, 17

*In re Houbigant Inc.*,
    914 F. Supp. 964 (S.D.N.Y. 1995) ..........................................................................................24

*Hydrogen Master Rights, Ltd. v. Weston*,
    No. 16-474-RGA, 2017 WL 78582 (D. Del. Jan. 9, 2017) .....................................................22

*Kamdem-Ouaffo v. Pepsico, Inc.*,
    No. 14-CV-227 (KMK), 2015 WL 1011816 (S.D.N.Y. Mar. 9, 2015) ...................................22

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
    494 F. App'x 153 (2d Cir. 2012) .............................................................................11, 14, 19

*King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*,
    No. 09 Civ. 3980(DLC), 2009 WL 5033960 (S.D.N.Y. Dec. 23, 2009), *aff'd*,
    396 F. App'x 736 (2d Cir. 2010) .............................................................................................21

*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007) ................................................................................11, 14

*Phansalkar v. Andersen Weinroth & Co.*,
    175 F. Supp. 2d 635 (S.D.N.Y. 2001) .....................................................................................18

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*,
    No. 08 Civ. 10578(RJS), 2010 WL 1257326 (S.D.N.Y. Mar. 12, 2010) ...........................11, 14

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
    449 F. App'x 57 (2d Cir. 2011) ...............................................................................................19

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*,
    893 F. Supp. 285 (S.D.N.Y. 1995) ........................................................................13

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    96 F. Supp. 3d 325, 332 (S.D.N.Y. 2015) ...............................................................9

*Speedmark Transp., Inc. v. Mui*,
    778 F. Supp. 2d 439 (S.D.N.Y. 2011)...................................................................10

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
    No. 15-CV-211 (LGS) (RLE), 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ......................22

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001)...........................................................................13, 17

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*,
    734 F. Supp. 2d 368 (S.D.N.Y. 2010).............................................................11, 15

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
    822 F.3d 650 (2d Cir. 2016)..............................................................................17

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
    988 F. Supp. 367 (S.D.N.Y. 1997) .....................................................................24

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*,
    455 F. App'x 102 (2d Cir. 2012) ........................................................................16

**STATE CASES**

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (N.Y. 2004) ...............................................................................16

*Citicorp Retail Servs., Inc. v. Wellington Mercantile Servs., Inc.*,
    90 A.D.2d 532 (N.Y. App. Div. 1982) ............................................................18, 19

*Clark-Fitzpatrick, Inc. v. Long Island R.R.*,
    70 N.Y.2d 382 (N.Y. 1987) .............................................................................10

*Courageous Syndicate, Inc. v. People-To-People Sports Comm., Inc.*,
    141 A.D.2d 599 (N.Y. App. Div. 1988) .................................................................19

*Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*,
    296 A.D.2d 103 (N.Y. App. Div. 2002) ...........................................................18, 19

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Matzan v. Eastman Kodak Co.*,
   521 N.Y.S.2d 917 (N.Y. App. Div. 1987) ..............................................................18

*State v. Seventh Regiment Fund, Inc.*,
   98 N.Y.2d 249 (N.Y. 2002) ....................................................................................18

**FEDERAL STATUTES**

Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* ..............................................22, 23

**FEDERAL RULES**

Fed. R. Civ. P. 8 .............................................................................................................15

Fed. R. Civ. P. 9 ...............................................................................................10, 13, 16

Fed. R. Civ. P. 12(b)(6) ...................................................................................................9

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, as soon as they may be heard, Defendants the J. Paul Getty Trust, the J. Paul Getty Museum, and Museum Director Timothy Potts (collectively, the "Getty Defendants") shall and hereby do move for an order dismissing with prejudice Counts 2–10 of the Complaint advanced by Phoenix Ancient Art, S.A., Petrarch LLC a/k/a Electrum, and Regulus International Capital Corp. (collectively, "Plaintiffs").  This motion is supported by the following Memorandum of Points and Authorities and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

## STATEMENT OF REQUESTED RELIEF

The Getty Defendants request under Federal Rule of Civil Procedure 12(b)(6) that the Court dismiss with prejudice Counts 2–10 of Plaintiffs' Complaint.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether Plaintiffs may recover in tort from the Getty Defendants for alleged breaches of a written contract;

2.  Whether Plaintiffs may pursue quasi-contractual causes of action against the Getty Defendants when Plaintiffs affirmatively allege the existence of a written contract governing the parties' relationship;

3.  Whether Plaintiffs adequately have pleaded claims arising under the Defend Trade Secrets Act, when the only conduct allegedly violative of that Act occurred prior to the Act's effective date;

4.  Whether Plaintiffs have adequately pleaded claims on behalf of Defendant Regulus International Capital Corp. when the Complaint contains only the most conclusory allegations about that entity's role in the events giving rise to this action.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This is a contract dispute that arises out of Plaintiffs' failed attempt to broker the sale of the Torlonia Collection, one of the world's largest and most famous private collections of classical Greek and Roman sculptures. Because of insurmountable issues related to Italian cultural patrimony law, the Getty declined the sale. The Collection's owners instead later struck a well-publicized accord (the "Accord") with the Italian Ministry of Culture that serves as an important first step toward a hope of organizing exhibitions of the Collection in Italy and elsewhere. Plaintiffs now allege that the Accord with the Italian Ministry of Culture (the same Ministry that administers nearly every museum in Italy) is in fact a secret sale of the Collection to the Getty, negotiated behind Plaintiffs' backs, allegedly in violation of a Non-Disclosure and Non-Circumvention Agreement ("NDNCA"). Based on these claims, Plaintiffs demand that the Court award them a **$77 million** judgment against the Getty (a not for profit organization) constituting "commission" for a deal that was never consummated.

At the appropriate time—when the Court is not required to accept Plaintiffs' allegations as true—the Getty will demonstrate that Plaintiffs' claims for breach of the NDNCA are meritless. Plaintiffs' fanciful suggestion that the Getty "conspired" with both the Italian government and the Collection's owners to arrange a clandestine acquisition of the Collection is demonstrably false. The Getty has never believed that Plaintiffs' proposals made sense, has not discussed a purchase of the Collection with anyone but Plaintiffs, and has not obtained an ownership interest (or anything close to it) in the Collection.

The Getty has had communications with the Torlonia Family and representatives of the Italian government about the possibility that the Getty—as part of its nonprofit mission to promote the arts for the benefit of the American public, and without payment to anyone—might someday serve as one of several exhibition venues if the Collection ever goes on tour. Even if

Plaintiffs could prove that such communications violate the NDNCA (which the Getty disputes), Plaintiffs' alternative claim for a *commission* on a non-profit exhibition faces insurmountable hurdles.  Among other challenges is the fact that the Getty has never agreed to pay Plaintiffs a penny.  To obtain damages on a claim for breach of the NDNCA, Plaintiffs will confront the impossible task of proving that, but for a breach (if one can be proved), someone would *voluntarily* have agreed to pay Plaintiffs a commission for proposing an unworkable idea that the Getty rejected.

Apparently recognizing the weakness of their breach of contract claim, Plaintiffs attempt to refashion their claims for breach of the NDNCA into nearly a dozen different tort, quasi-contractual, and statutory causes of action.  These causes of action (Counts 2–10) fail as a matter of law, and may be dismissed at the pleading stage.  Under New York law, claims for breach of contractual obligations may be redressed solely through the law of contract.  A contract plaintiff may not use the law of tort, equity, or quasi-contract to rewrite bargained-for contractual provisions, add terms never bargained for, or recover damages not available in contract.  Because Counts 2–10 of the Complaint either restate claims for breach of contract in other terms or attempt to redefine the terms that the parties agreed would govern their relationship, they fail to state a claim on which relief can be granted.  Counts 2–10 also fail on their own terms, for a series of reasons set forth below.

In addition, the Complaint attempts to assert causes of action on behalf of an entity called Regulus International Capital Corp. ("Regulus"), even though the Complaint is devoid of factual allegations that would support any claim by this entity.  Regulus is not a signatory to the NDNCA and is not mentioned in that agreement.  The sole factual allegation concerning this entity is that *other plaintiffs* agreed with Regulus to form a cooperative venture to sell the

Torlonia Collection.  Regulus may have claims against these other plaintiffs, but it has not pleaded a viable claim against the Getty Defendants.

## FACTUAL BACKGROUND[1]

### I.  The Parties

#### A.  The Plaintiffs

Plaintiff Phoenix Ancient Art, S.A. is a dealer of antiquities with galleries in Geneva and New York.  (Compl. ¶¶ 4–6.)  Phoenix operates in the United States through an "exclusive agent" called Petrarch LLC that—for reasons that remain unclear—Plaintiffs refer to as Electrum.  (*Id.* ¶ 7.)  Both Phoenix Ancient Art, S.A. and Electrum appear to be owned and managed by brothers Ali and Hicham Aboutaam, and we refer to both entities collectively as "Phoenix."

Regulus is alleged to be a Delaware Corporation with its principal place of business in Greenwich, Connecticut, but the Complaint is otherwise devoid of information about Regulus's business or operations.  (Compl. ¶ 8.)

#### B.  The Defendants

As the Court is no doubt aware, the J. Paul Getty Trust (the "Getty") is the world's largest cultural and philanthropic organization dedicated to the visual arts.  Among other programs, the Getty operates the J. Paul Getty Museum (the "Museum"), which collects, conserves, and exhibits works of art for the benefit of the public.[2]  Defendant Dr. Timothy Potts is the Director of the Getty Museum.

---

[1] The Getty Defendants assume the following facts from Plaintiffs' Complaint are true for purposes of this motion.

[2] (*See* Compl. ¶¶ 10, 15-17; http://www.getty.edu/museum/.)  The Museum is an operating program of the Getty; it has no legal existence separate from the J. Paul Getty Trust.

Defendants Arturo and Livio Russo (the "Russos") are alleged to be coin dealers who served as agents for the Torlonia Family.  (Compl. ¶¶ 47, 78.)

## II.    Factual History

### A.    <u>Phoenix's Failed Effort to Broker a Sale of the Torlonia Collection</u>

The Torlonia Collection is perhaps the largest and most significant collection of privately owned Greek and Roman sculptures in the world.  (Compl. ¶ 43.)  It has been widely published and studied, and has long been well known to the artistic community.  The Collection was assembled by an Italian prince in the nineteenth century, and has remained in the possession of an Italian noble family—the Torlonias—ever since.  (*Id.* ¶ 44.)  The Collection was on public display until the 1960s, when the Family converted its exhibition space into private apartments. (*Id.* ¶ 45.)

In 2009 or 2010, Phoenix learned through the Russos that portions of the Collection might be "available for sale."  (Compl. ¶¶ 48, 50.)  According to the Complaint, Phoenix invested "years of hard work" in making a sale of the Collection possible.  (*Id.* at 1.)  Plaintiffs "painstakingly catalogue[d]" the Collection, took "thousands" of photographs, translated certain documents supporting the provenance of the Collection, "cultivated" Phoenix's relationship with Italian authorities, developed a variety of unspecified "trade secrets," and spent several years unsuccessfully attempting to find a buyer.  (*Id.* ¶¶ 52–55.)

Eventually, Phoenix turned to the Getty.  (*See* Compl. ¶¶ 56–57.)  Plaintiffs do not allege (and cannot allege) that the Getty was unaware of the Collection's existence; rather, as the Complaint acknowledges, the Collection has long been well-known in the art community.[3]  (*See*

---

[3] Indeed, the Collection has been widely studied and published since the nineteenth century.  *See, e.g.*, Torlonia Museum, WIKIPEDIA (last visited May 4. 2017), *available at* https://en.wikipedia.org/wiki/Torlonia_Museum; CARLO LODOVICO VISCONTI, I MONUMENTI DEL (footnote continued)

4

*id.* ¶¶ 43–46, 77.)  Phoenix initially suggested an unspecified "opportunity" to purchase a

significant collection of antiquities, and insisted that the Getty agree to certain confidentiality

requirements as a condition of learning more.  (*Id.* ¶¶ 58–61.)

On July 12, 2013, Phoenix and the Getty entered into a three-year Non-Disclosure and

Non-Circumvention Agreement.[4]  (Compl. ¶ 62.)  According to the Complaint, the NDNCA: (i)

required the Getty to maintain the confidentiality of Phoenix's confidential information; (ii)

precluded the Getty from using Phoenix's confidential information for any purpose other than

"evaluating a possible transaction"; and (iii) precluded the Getty from circumventing Phoenix by

directly contacting the Torlonia Family for a period of three years.  (*Id.* ¶¶ 62–68 (internal

quotation marks omitted).)  The Complaint does not allege—and Plaintiffs cannot truthfully

allege—that any provision of the NDNCA required the Getty to pay Phoenix (or anyone else) a

commission, or otherwise to compensate Phoenix for effort allegedly expended in preparing the

Collection for sale.  (*See id.*; *see also* Dkt. No. 44 at 2 (acknowledging that "[t]he NCA . . . did

not contain any . . . commission amount and did not explicitly explain how an eventual deal

would be structured").)  Rather, any such compensation depended upon someone subsequently—

and *voluntarily*—agreeing to pay a commission if and when Phoenix successfully brokered a

sale.

The Complaint also does not allege that Regulus is a signatory to the NDNCA, that

Regulus is an express beneficiary of the NDNCA, that Regulus is mentioned anywhere in the

---

MUSEO TORLONIA (1885), *available at* http://arachne.uni-
koeln.de/arachne/index.php?view%5blayout%5d=buch_item&search%5bconstraints%5d%5bbuc
h%5d%5balias%5d=Visconti1885Vol1&search%5bmatch%5d=exact (text); http://arachne.uni-
koeln.de/arachne/index.php?view%5blayout%5d=buch_item&search%5bconstraints%5d%5bbuc
h%5d%5balias%5d=Visconti1885Vol2&search%5bmatch%5d=exact (images).

[4] The Complaint alleges that the NDNCA was intended to "formally document" certain oral
agreements reached during the parties' preliminary discussions in Spring 2013.  (Compl. ¶ 60.)

NDNCA, that Regulus participated in the negotiation of the NDNCA, or that Regulus was ever even mentioned during the negotiation of the NDNCA.  (*See* Compl. ¶¶ 62–68.)

As the Complaint itself implicitly acknowledges, Plaintiffs' task of brokering a private sale of the Torlonia Collection to anyone—particularly a foreign institution like the Getty—faced major obstacles.  (*See* Compl. ¶¶ 96–99, 135; *see also id.* ¶¶ 107–09 (noting that rumors about a possible sale prompted a public backlash and demands that the Italian government block a sale).)  Italian law imposes very significant restrictions on the private ownership, sale, and export of antiquities, in particular important collections of antiquities like the Torlonia Collection.  (*Id.* ¶¶ 96–99, 135.)

Nevertheless, over the next two years, Phoenix tried—and, not surprisingly, failed—to cobble together a workable proposal.  In order to facilitate a sale, Phoenix shared its "trade secret" catalogue of the Collection with the Getty, sent several letters to the Torlonia Family on the Getty's behalf, arranged two meetings with the Torlonia Family's representatives, and attempted to arrange a viewing of the Collection for Dr. Potts.  (Compl. ¶¶ 69–91.)  Phoenix also proposed several "trade-secret deal structures" that Plaintiffs say would overcome Italy's prohibition on the foreign ownership and export of antiquities.  (*Id.* ¶¶ 99–101, 108.)  Plaintiffs also allege that they designed and developed a "unique insurance plan" that would protect the Getty in the event that the Italian government was not impressed with Plaintiffs' "trade secret deal structures" and declined to permit the sale of this famous collection to a foreign buyer.[5]  (*Id.* ¶¶ 100–01, 109–111.)

---

[5] Plaintiffs proposed a purchase price of between $350 million and $550 million, *plus* a commission of 22% (between $77 million and $121 million) for themselves.  (Compl. ¶¶ 102-03.)  The Complaint does not allege that anyone involved in the transaction except Plaintiffs themselves agreed to such an exorbitant commission.  (*See id.*)

B.    The Torlonia Family Strikes a Deal with the Italian Government

By March of 2015, the Getty had told Plaintiffs it was not interested in pursuing a purchase.  (Compl. ¶¶ 105.)  By that summer, the Torlonia Family had entered into negotiations with the Italian Ministry of Culture to make the Collection "fully accessible" to the public.  (*Id.* ¶ 112 (internal quotation marks omitted).)  Thereafter, both the Torlonia Family and the Getty "ceased discussing the sale of the Torlonia Collection with Plaintiffs."  (*Id.* ¶ 117.)  In March 2016, the Torlonia Family signed a highly publicized agreement with the Italian Ministry of Culture for the public exhibition and restoration of the Torlonia Collection.  (*Id.* ¶¶ 122–23.) Though the agreement itself is a matter of public record,[6] Plaintiffs provide little information about the terms of this agreement.  Plaintiffs say only that the deal involves an exhibition of approximately 60 sculptures in Rome, and that the Collection will then travel elsewhere in Europe and the United States "with the intent of finding a new permanent home for the collection."  (*Id.* ¶ 123.)  Salvatore Settis, a prominent Italian art historian and sometime Ministry advisor who also worked at the Getty several decades ago, was selected to be the curator of the new exhibitions.  (*Id.* ¶ 124.)

Plaintiffs assert that this Accord is in fact just cover for a clandestine transfer of the Torlonia Collection to the Getty—the result of an elaborate "conspir[acy]" between the Getty and others (including, apparently, the Republic of Italy) to accomplish a sale without paying Plaintiffs a commission.  (Compl. ¶¶ 118–20.)  According to the Complaint, the Accord is "identical" to one of the "trade secret deal structures" proposed to the Getty, and was "literally plagiarized [and] copied" from a proposal that the Plaintiffs made to the Italian Ministry for

---

[6] *See* Accordo (Mar. 15, 2016), *available at* http://www.beniculturali.it/mibac/multimedia/ MiBAC/documents/1458040126455_AccordoTorlonia.pdf.

Cultural Assets.  (*Id.* ¶¶ 125, 130, 133, 136.)  Plaintiffs shield these assertions in the Complaint from scrutiny by failing to allege *any* of the specifics of the "trade secret deal structures" they proposed, or to identify any of the features that supposedly were "plagiarized and copied" in the Accord.  Perhaps this is because it is difficult to imagine how deal structures for an accord with an Italian government ministry (particularly one that claims patrimony rights over art located in Italy) would resemble in any way a proposed sale to a private party.

Plaintiffs allege this covert sale was possible only because of the Plaintiffs' efforts to improve the Getty's relationship with the Italian government (*e.g.*, Compl. ¶¶ 99, 125), because the Getty misappropriated Plaintiffs' purported trade secrets (*e.g.*, *id.* ¶¶ 121, 125, 135), and because the Getty communicated with the Torlonia Family and the Italian government in violation of the NDNCA (*e.g.*, *id.* ¶¶ 113–16, 119–20, 126–27, 132).  Plaintiffs also allege that the Getty at some unidentified point "refused" to return to them a package of photographs of the Collection.  (*Id.* ¶ 71.)

    C.    <u>Plaintiffs File Suit</u>

On January 12, 2017, Phoenix and Regulus filed the instant action.  The Complaint names as defendants the J. Paul Getty Trust, the J. Paul Getty Museum, Museum Director Timothy Potts, and Arturo and Livio Russo, and seeks in excess of $77 million dollars in damages.  The Complaint asserts ten causes of action against the Getty Defendants: (1) breach of contract (against the Getty only); (2) breach of contract on behalf of Regulus as a third-party beneficiary of the NDNCA (against the Getty only); (3) breach of the implied covenant of good faith and fair dealing (against the Getty only); (4) tortious interference with contract (against Dr. Potts only); (5) tortious interference with an advantageous business relationship (against all Getty Defendants); (6) fraud (against all Getty Defendants); (7) unjust enrichment (against all Getty Defendants); (8) unfair competition (against all Getty Defendants); (9) conversion (against

all Getty Defendants); and (10) violation of the Defend Trade Secrets Act (against all Getty Defendants).

The gravamen of each of these causes of action is identical:  the Getty Defendants failed to honor promises made in the NDNCA concerning the handling of purported confidential information, and wrongfully cut the Plaintiffs out of a deal for the sale of the Collection in violation of the NDNCA.

Notably, even though the Complaint makes clear that the purpose of the NDNCA was to help the Plaintiffs negotiate a *sale* of the Collection, Plaintiffs also appear to argue that they are entitled to a multi-million dollar commission if the Getty simply hosted a not-for-profit exhibition of the Collection for the benefit of the public,[7] without obtaining any right of ownership and without paying anything to the Torlonia Family.  (*See* Compl. ¶¶ 145, 159.)

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  A claim is plausible on its face only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]he Court is not required to credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 332 (S.D.N.Y. 2015) (citation omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted).  "Determining whether a complaint states a plausible

---

[7] The Getty has never charged an admission fee.  *See, e.g.*, http://www.getty.edu/visit/.

claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To plead fraud, a plaintiff must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) by stating the circumstances constituting fraud with particularity. *See Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).

## ARGUMENT[8]

The Getty Defendants deny that Plaintiffs are entitled to any relief, and will demonstrate at an appropriate time that Phoenix's claims for breach of contract are meritless. The Plaintiffs' remaining claims, however, fail to state a claim upon which relief can be granted, and may be disposed of at the pleading stage.

## I.   Plaintiffs' Tort Claims Fail as a Matter of Law

### A.   All of Plaintiffs' Tort Claims Fail Because Such Claims Are Duplicative of Plaintiffs' Claims for Breach of Contract

"It is . . . settled under New York law that a tort claim will not arise 'where plaintiff is essentially seeking enforcement of [a contractual] bargain.'" *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) (citation omitted). Therefore, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389 (N.Y. 1987). This rule is one of the "dikes that New York courts have erected in their . . . attempt to keep contract law from drown[ing] in a sea of tort," *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989) (citation and internal quotation marks omitted), and is necessary to ensure

---

[8] Because a fact-intensive choice-of-law analysis is "premature" on a motion to dismiss, *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011), the Getty Defendants assume that New York law applies for purposes of this motion to dismiss without conceding that a proper choice-of-law analysis would yield that result.

that parties do not use the law of tort to rewrite their contractual bargains or obtain damages that

are anathema to the law of contract.  *See id.*; *see also Travelers Cas. & Sur. Co. v. Dormitory

*Auth.-State of N.Y.*, 734 F. Supp. 2d 368, 378–79 (S.D.N.Y. 2010).

For that reason, courts consistently dismiss tort claims that merely restate claims for

breach of contractual obligations.  *See, e.g.*, *Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F.

App'x 153, 158 (2d Cir. 2012) (affirming dismissal of a conversion claim because such a claim

"cannot be predicated on a mere breach of contract" (internal quotation marks omitted));

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197–206

(S.D.N.Y. 2011) (dismissing as duplicative on motion to dismiss implied covenant, fraud, unjust

enrichment, and conversion claims); *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F.

Supp. 2d 541, 558 (S.D.N.Y. 2007) (same, unfair competition); *Piven v. Wolf Haldenstein Adler

Freeman & Herz L.L.P.*, No. 08 Civ. 10578(RJS), 2010 WL 1257326, at *10 (S.D.N.Y. Mar. 12,

2010) (same, conversion).

For example, in *Haining Zhang v. Schlatter*, 557 F. App'x 9 (2d Cir. 2014), the Second

Circuit affirmed dismissal of tort claims that were predicated on a breach of a "Non-

Disclosure/Non-Circumvention Agreement."  There, the plaintiff alleged that defendants violated

the relevant agreement by misappropriating the plaintiff's trade secrets and "circumventing" the

plaintiffs to negotiate a business opportunity without paying plaintiff a commission.  *Id.* at 11.

Plaintiff sought to repackage this claim as one for fraud, characterizing the defendants'

contractual promises as representations.  *Id.* at 10–11.  The district court dismissed the plaintiffs

tort and fraud claims, and the Second Circuit affirmed.  In language that could easily have been

written about this case, the Second Circuit explained:

> [t]o the extent plaintiffs allege fraud based upon statements that the . . .
> Defendants would not disclose confidential and proprietary data provided by

11

plaintiffs, would not circumvent plaintiffs, and would compensate plaintiffs for
their efforts, the district court properly held that such claims were not sufficiently
distinct from the defendants' contract obligations under the Non–Disclosure/Non–
Circumvention Agreement to avoid dismissal.

557 F. App'x at 12.

*A Star Group, Inc. v. Manitoba Hydro*, No. 13 Civ. 4501(PAC), 2014 WL 2933155

(S.D.N.Y. June 30, 2014) is similarly instructive.  There, the parties entered into an agreement

that required the defendant to "maintain the confidentiality of [the plaintiff's] proprietary

information and trade secrets."  *Id.* at *1.  When the defendant allegedly misappropriated those

trade secrets, the plaintiff filed suit, alleging causes of action for breach of contract, breach of the

implied covenant of good faith and fair dealing, misappropriation of trade secrets, unfair

competition, and unjust enrichment.  *Id.*  Applying New York law, the court rejected the

plaintiff's attempt to transform the defendant's alleged breach of the confidentiality agreement

into a tort, and dismissed all of the plaintiff's tort claims as duplicative of the claims for breach

of contract.  *Id.* at *7 (collecting cases).  The court rejected the plaintiff's contention that the tort

claims were "independent" of the claims for breach of contract, noting that the sole basis for the

defendant's confidentiality obligation was the contract itself.  *Id.*  On appeal, the Second Circuit

affirmed, describing the decision as "well-reasoned."  621 F. App'x 681, 683 (2d Cir. 2015)

(summary order).

Here, Counts 5–6 and 8–9 each impermissibly seek to turn an ordinary (alleged) breach

of contract into a tort.  Plaintiffs' claim for breach of contract asserts that the Getty breached the

contract in three ways: (i) the Getty "failed to keep information received from Plaintiffs[9]

pursuant to the [NDNCA] as Confidential;" (ii) the Getty "refused to return" certain confidential

---

[9] We have removed capitalization from terms that are fully capitalized in Plaintiffs' Complaint.

information to Phoenix; and (iii) the Getty "directly circumvented" Plaintiffs in order to obtain

rights to the Collection without paying Plaintiffs a commission.  (Compl. ¶ 144.)  This is the

same wrongful conduct that underpins each and every one of Plaintiffs' tort claims, to wit:

 *Count 5: Intentional Interference.*  Plaintiffs' intentional interference claim is a pure

copy and paste of their allegation that the Getty breached the NDNCA by "cut[ting] Plaintiffs out

of the deal" (Compl. ¶ 120) for the purchase of the Torlonia Collection.  Plaintiffs assert that

they had a potentially profitable relationship with the Torlonia Family, that the Getty Defendants

knew about Plaintiffs' relationship with the Family, and that the Getty Defendants nevertheless

"intentionally and with malice cut" Plaintiffs out of that relationship.  (*Id.* ¶¶ 172–74.)

 *Count 6: Fraud.*  Similarly, Plaintiffs' fraud claim simply reframes the allegedly broken

promises contained in the NDNCA as "misrepresent[ations] of material facts" by the Getty

Defendants.  (Compl. ¶ 179.)  Specifically, Plaintiffs allege that the Getty Defendants

"misrepresented" that they would maintain the confidentiality of Plaintiffs' confidential

information, that they would not "circumvent Plaintiffs in a deal with the Torlonia family," and

that they would not contact the Torlonia Family without Plaintiffs' participation.[10]  (*Id.*)  These

allegations do not suffice to plead an independent claim of fraud.  *See*, *e.g.*, *Telecom Int'l Am.,*

---

[10]  Plaintiffs also assert that the Getty "misrepresented" it would compensate Plaintiffs for
facilitating a deal with the Torlonia Family.  (Compl. ¶ 179.)  But if this "misrepresentation" is
an implicit representation contained in the contract, then this aspect of the fraud claim is
duplicative of the contract claim.  If this "misrepresentation" is rather a representation separate
from the contract, the fraud claim fails because Plaintiffs have failed to set forth *any* factual
support for such an allegation, much less sufficient facts to survive Rule 9(b).

 Plaintiffs also assert that the Getty fraudulently misrepresented that it "did not have
interest in a deal with the Torlonia family."  (*Id.*)  But this allegation fails to save Plaintiffs'
fraud claim because (among other reasons) misrepresentations designed to *conceal* a breach of
contract are not actionable in tort.  *See Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.
Supp. 285, 290 (S.D.N.Y. 1995) ("[A]lleged concealment of a breach is insufficient to transform
what would normally be a breach of contract action into one for fraud.").

*Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (allegations that a promisor never intended to perform do not transform a breach of contract into a fraud); *Haining Zhang*, 557 F. App'x at 12 (dismissing fraud claim as duplicative); *Arista Techs., Inc. v. Arthur D. Little Enters., Inc.*, 125 F. Supp. 2d 641, 653–54 (E.D.N.Y. 2000) ("[A] party cannot maintain a fraud claim if the alleged fraud claim is merely the breach of contract." (citations and internal quotation marks omitted)).

*Count 8: Unfair Competition.*  Plaintiffs state explicitly that their unfair competition claim is premised entirely on breach of the NDNCA.  In toto, Plaintiffs' unfair competition claim amounts to the assertion that the Getty Defendants "improperly acquired, used, and disclosed PLAINTIFFS' trade secrets . . . in violation of the NON-CIRCUMVENTION AGREEMENT." (Compl. ¶ 192.)  A mere alleged breach of contract is not sufficient to state a claim for unfair competition.  *See also*, *e.g.*, *A Star Grp.*, 2014 WL 2933155, at *7 (dismissing unfair competition claim as duplicative); *Orange Cnty. Choppers*, 497 F. Supp. 2d at 558 (same).

*Count 9: Conversion.*  Plaintiff's cause of action for conversion alleges that the Getty Defendants possessed, used, and refused to return the "confidential and proprietary business information" they disclosed to the Getty under the NDNCA.  (Compl. ¶¶ 199–200.)  This is exactly the conduct they say breached the NDNCA.  (*See id.* ¶ 144 (alleging that the Getty breached the NDNCA by "fail[ing] to keep information received from PLAINTIFFS pursuant to the [NDNCA] as Confidential" and "refus[ing] to return . . . [the] confidential information").)  Violations of contractual obligations will not support a cause of action for conversion.  *E.g.*, *Karmilowicz*, 494 F. App'x at 158 (dismissing conversion claim as duplicative); *Ellington Credit Fund*, 837 F. Supp. 2d at 203–05 (same); *Piven*, 2010 WL 1257326, at *10 (same).

14

\*     \*     \*     \*

Plaintiffs likely will argue that their tort claims should survive because, under Rule 8, they are permitted to plead in the alternative. (*See* Dkt. 44 at 1–2.) This argument, however, misunderstands the nature of New York's prohibition on duplicative pleading. The rule is not a rule of procedure. Rather, as a matter of New York *substantive* law, the Getty Defendants' alleged breach of the NDNCA is not a tort, and merely rephrasing the Getty Defendants' conduct in the language of tort is insufficient to plead a cause of action in tort. *See*, *e.g.*, *Haining Zhang*, 557 F. App'x at 12.

Plaintiffs may also argue their tort claims may survive because the claims are asking for relief "outside the four corners" of the NDNCA and because the NDNCA does not provide for payment of a commission. (*See* Dkt. 44 at 2–3.) This will get Plaintiffs nowhere. The prohibition on duplicative pleading reflects the principle that parties who agree to a contract agree that the terms they bargain for will govern the relationship between them. For that reason, the law prevents contracting parties from alleging tort duties that would rewrite or invent duties to which they never agreed no less than it prevents parties from refashioning the breach of those duties as tort claims. *See Carmania Corp*, 705 F. Supp. at 938; *Travelers*, 734 F. Supp. 2d at 378–79. As such, the fact that the NDNCA did not provide Plaintiffs any assurance of payment is a barrier to their claim for relief, not an excuse for them to inject the law of tort into this contract dispute.

B.      Plaintiffs' Tort Claims Fail on Their Own Merits

Even leaving aside the fact that Plaintiffs' tort claims merely restate claims for the breach of contractual obligations, Plaintiffs' tort claims fail to state a claim for relief.

***Count 5: Intentional Interference.*** Plaintiffs fail to state an independent claim for intentional interference with an advantageous business relationship because they fail to allege

15

that the Getty committed a crime or independent tort *against the Torlonia Family*.  To state such

a claim, "a plaintiff must adequately allege that: (1) the plaintiff had business relations with a

third party; (2) the defendant interfered with those business relations; (3) the defendant acted for

a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts

injured the relationship."  *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*,

455 F. App'x 102, 106 (2d Cir. 2012) (citation and internal quotation marks omitted).  To satisfy

the third element, "the defendant's conduct must amount to a crime or an independent tort" and

must be directed "*not at the plaintiff itself*, but at the party with which the plaintiff has or seeks to

have a relationship."  *Id.* at 106–07 (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 192

(N.Y. 2004)) (internal quotation marks omitted).  Here, the Getty Defendants are not alleged to

have done anything even remotely harmful towards the Torlonia Family, much less anything

criminal or independently tortious.

    *Count 6: Fraud.*  Plaintiffs' fraud allegations fail because Plaintiffs have not pleaded

those claims with the particularity required by Rule 9.  "To prove fraud under New York law, 'a

plaintiff must show that (1) the defendant made a material false representation, (2) the defendant

intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the

representation, and (4) the plaintiff suffered damage as a result of such reliance.'"

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996) (citation and

internal quotation marks omitted).  To plead a claim with particularity under Rule 9(b), the

Complaint must "(1) detail the statements (or omissions) that the plaintiff contends are

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) are fraudulent."  *Harsco Corp. v. Segui*,

91 F.3d 337, 347 (2d Cir. 1996).  Plaintiffs come nowhere close to meeting these exacting

standards.  To the extent the Plaintiffs rely on statements made in the NDNCA (or its

negotiation) as the basis for its fraud claim, such claims fail because the Plaintiffs have alleged

no facts to support an inference that such statements—made more than two years before the

Getty's alleged breach of the NDNCA—were fraudulent *when made*.  *See U.S. ex rel. O'Donnell

v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016).  To the extent the

Complaint relies on other alleged misrepresentations, the Complaint fails to provide *any* detail

about such claims and thus fails to put the Getty Defendants on notice of the fraud claim against

them.  *See id.* at 658-66 (dismissing fraud claim on the ground that allegations of fraud were

impermissibly generalized); *accord Harsco*, 91 F.3d at 348 (affirming dismissal of fraud

claims).[11]

   ***Count 8: Unfair Competition.***  Plaintiffs fail to state an independent claim for unfair

competition because they fail plausibly to allege that the Getty Defendants obtained access to

Plaintiffs' purported trade secrets through fraud, deception, or abuse of a confidential

relationship.  *See*, *e.g.*, *Telecom Int'l Am.*, 280 F.3d at 197 ("The essence of an unfair

competition claim under New York law is that the defendant misappropriated the fruit of

plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through

*fraud or deception, or an abuse of a fiduciary or confidential relationship*." (citation and internal

quotation marks omitted) (emphasis added)).  Plaintiffs allege that the Getty breached the

NDNCA, but mere breach of a contract is not "abuse of a . . . confidential relationship" sufficient

to sustain an independent unfair competition claim.  *See*, *e.g.*, *Bancorp Servs., LLC v. Am. Gen.*

---

[11] To the extent Plaintiffs argue that the Getty defrauded Plaintiffs by "feign[ing]" a lack of
interest in the Torlonia Collection (*see* Compl. ¶¶ 105, 179), such allegations fail to state a claim
for relief because: (i) Plaintiffs have failed plausibly to allege either that they relied on such
statement or that they were injured by such statement; and (ii) Plaintiffs have failed to provide
any detail about the statement or the speaker.

*Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016) (rejecting unfair competition claim based on "disclosure and use of information that was protected by [an] NDA").

   ***Count 9: Conversion.***  Plaintiffs fail to state an independent conversion claim because intangible property (such as relationships or knowledge of Italian law) cannot be converted.  *See Phansalkar v. Andersen Weinroth & Co.*, 175 F. Supp. 2d 635, 639–40 (S.D.N.Y. 2001) ("Under New York law, the general rule is that 'a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property.'" (quoting *Matzan v. Eastman Kodak Co.*, 521 N.Y.S.2d 917, 918 (N.Y. App. Div. 1987))).  Furthermore, Plaintiffs have not alleged that the Getty Defendants have *excluded* them from their relationships or their knowledge of Italian law.  *See State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259–60 (N.Y. 2002) ("[A] defendant who, though having custody of goods, does not 'exclude the owner from the exercise of his rights' is not liable for conversion." (citation omitted)).

C.      Plaintiffs Fail to Plead that Dr. Potts Committed Any Independent Torts

   Plaintiffs' attempts to gin up a tort claim against Dr. Potts individually are equally futile. It is well-established that a party who contracts with a corporate entity cannot recover in tort against a corporate agent for the agent's role in causing the breach unless the agent acted outside the scope of his or her employment or for his or her individual gain.  *See Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996); *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 108–09 (N.Y. App. Div. 2002); *Citicorp Retail Servs., Inc. v. Wellington Mercantile Servs., Inc.*, 90 A.D.2d 532, 532–33 (N.Y. App. Div. 1982).  Plaintiffs' Complaint contains no allegations to support such an inference.  To the contrary, Plaintiffs affirmatively allege the opposite: that Dr. Potts's allegedly wrongful acts were undertaken "on behalf of" the Getty, *not* in his individual capacity.  (*See, e.g.*, Compl. ¶¶ 63, 70, 87.)  An employee cannot be

18

held liable in tort for directing a corporation to undertake acts that constitute a breach of contract.

*See Courageous Syndicate, Inc. v. People-To-People Sports Comm., Inc.*, 141 A.D.2d 599, 600–

01 (N.Y. App. Div. 1988) (dismissing fraud claim against an employee in personal capacity,

recognizing that, "although entitled 'fraud', the plaintiffs' second cause of action merely states a

breach of contract claim"); *Joan Hansen*, 296 A.D.2d at 109–10 ("emphasiz[ing] that the

existence of a plausible claim for breach of contract does not, without more, provided a basis for

assertion of a cause of action for interference with contractual relations against those corporate

officers and directors whose actions brought about the asserted breach"); *Citicorp*, 90 A.D.2d at

533 ("To hold officers or employees liable for causing their corporation to breach its contract, it

is not sufficient merely to allege, in conclusory form, that they acted for personal profit or

committed independently tortious acts.").[12]

## II.     Plaintiffs' Quasi-Contractual Claims Fail

Phoenix's quasi-contract claims similarly should be dismissed because they also

impermissibly duplicate Phoenix's breach of contract claim.  "[Q]uasi-contractual . . . relief is

unavailable where . . . an express contract covers the subject matter."  *Karmilowicz*, 494 F.

App'x at 157 (affirming dismissal on motion to dismiss of breach of implied contract and unjust

enrichment claims); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)

(same, implied covenant claim); *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F.

App'x 57, 59 (2d Cir. 2011) (same, implied contract and quantum meruit claims); *Coty, Inc. v.*

*L'Oreal S.A.*, 320 F. App'x 5, 6 (2d Cir. 2009) (same, unjust enrichment claim).

---

[12] Plaintiffs' failure to include any allegations against Dr. Potts independent of their contract allegations also defeats their unjust enrichment claim against him.  Unjust enrichment necessarily requires that the defendant be enriched.  Even if Plaintiffs could show that *the Getty* somehow benefitted from its alleged breach of the NDNCA (which it would not have), there is no allegation that *Dr. Potts personally* benefitted.

For example, in *Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
No. 05 CV 6882(GBD), 2009 WL 362118 (S.D.N.Y. Feb. 9, 2009), a plaintiff and defendant
entered into a "Confidentiality Agreement and Use Restriction contract" in connection with a
contemplated joint real estate investment.  *Id.* at *1.  The contract provided for the exchange of
confidential information and restricted the parties from using such information except in
connection with the contemplated investment.  *Id.*  Later, the defendant "abruptly" ceased
discussions with the plaintiff and made its own offer on the real estate.  *Id.* at *2 (internal
quotation marks omitted).  As here, the plaintiff alleged both breach of contract and unjust
enrichment.  *Id.* at *3.  Notably, the contract "did not set forth the terms of the proposed joint
venture that the partie[s] hoped to complete, nor did it impose any specific obligations upon
either party in the event of a failed acquisition."  *Id.* at *2.  The court dismissed the unjust
enrichment claim as duplicative of the claim for breach of contract.  *Id.* at *8.  The court
explained:

> Plaintiff alleges that it provided confidential information pursuant to a written
> contract which it contends defines the parties' obligations.  Plaintiff provided
> confidential information pursuant to the Confidentiality Agreement.  The
> existence of that valid and enforceable written contract precludes plaintiff from
> asserting an equitable cause of action for unjust enrichment based on the misuse
> of those disclosures.

*Id.* (citation omitted).

That is exactly the situation here: Plaintiffs seek recovery in equity and quasi-contract for
the same "misuse of [the] disclosures" that underlie their breach of contract claim.  Indeed, the
very same alleged misconduct—the Getty's alleged misappropriation of Plaintiffs' confidential
information, and the Getty's alleged decision to "cut Plaintiffs out" of a proposed sale—form the
predicate for Plaintiffs' contractual and quasi-contractual causes of action.  (*Compare* Compl. ¶¶
113–21, 127–29, 144, *with id.* ¶¶ 159–62, 187–88.)  As such, these claims cannot survive.  *See*,

*e.g.*, *Cruz*, 720 F.3d at 125 ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."); *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (same); *see also Ellington Credit Fund*, 837 F. Supp. 2d at 205 ("A claim for breach of the implied covenant can be maintained in conjunction with a breach of contract claim 'only if the damages sought by the plaintiff[] for breach of the implied covenant are not intrinsically tied to the damages allegedly resulting from breach of contract'" (citation and internal quotation marks omitted)); *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) ("[A] breach of the implied covenant of good faith claim can survive a motion to dismiss 'only if it is based on allegations different than those underlying the accompanying breach of contract claim.'" (citation omitted)).

Plaintiffs have argued that they can plead their quasi-contract claims "in the alternative" because the validity of the NDNCA has not been established.  (Dkt. 44 at 1–2 (internal quotation marks omitted).)  However, to plead quasi-contract claims in the alternative, a plaintiff must affirmatively allege that the relevant contract is invalid, which Plaintiffs have failed to do.  *See*, *e.g.*, *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) ("While plaintiffs are generally free to plead alternative and contradictory theories of recovery . . . [the plaintiff's] failure to allege that the contracts at issue are invalid or unenforceable precludes it, under [New York law], from seeking quasi-contractual recovery for events arising out of the same subject matter."); *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09 Civ. 3980(DLC), 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) ("Unjust enrichment may be plead in the alternative where the plaintiff challenges the validity of the contract; it may not be plead in the alternative alongside a claim that the defendant breached an

enforceable contract."), *aff'd*, 396 F. App'x 736 (2d Cir. 2010); *Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14-CV-227 (KMK), 2015 WL 1011816, at *13 (S.D.N.Y. Mar. 9, 2015) ("[W]here a plaintiff, as here, fails to challenge the validity of a contract that governs the subject matter at issue, and instead alleges breach of said otherwise enforceable contract, under New York law he or she cannot plead unjust enrichment in the alternative.").

### III.   Plaintiffs Fail to Plead an Independent DTSA Claim

Plaintiffs' trade secret misappropriation claim—brought under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*—fails for at least two independent reasons.

First, Plaintiffs have not plausibly alleged that the Getty Defendants engaged in any conduct governed by the DTSA.  The DTSA has an effective date of May 11, 2016, and is not retroactive.  18 U.S.C. § 1832; *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-CV-211 (LGS) (RLE), 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016).  To plead a claim for violation of the DTSA, Plaintiffs must allege (among other things) "acquisition," "disclosure," or "use of a trade secret" by the Getty Defendants after that date.  *See* 18 U.S.C. § 1839(5); *Syntel*, 2016 WL 5338550, at *6.

Here, all of the allegedly wrongful conduct in the Complaint took place *prior* to May 11, 2016.  The Complaint does not allege that the Getty acquired any confidential information from the Plaintiffs after the summer of 2015.  (*See* Compl. ¶ 117 (noting that the Getty "ceased" communicating with Plaintiffs in the "fall of 2015").)  And the only alleged wrongful "disclosure or use" of Plaintiffs' confidential information occurred prior to March 2016, when the New York Times announced the Accord between the Torlonia Family and the Italian government.  (*See id.* ¶¶ 122–25.)  Conclusory assertions that the Getty Defendants "continue[]" to use Plaintiffs' trade secrets are not sufficient to state a claim.  Plaintiffs' claim under the DTSA must be dismissed. *See Hydrogen Master Rights, Ltd. v. Weston*, No. 16-474-RGA, 2017 WL 78582, at *10 (D. Del.

22

Jan. 9, 2017) (rejecting a plaintiff's claim to continuing misappropriation because "[t]he complaint does not allege any acts on or after May 11, 2016 other than a conclusory allegation of continuing use and disclosure").[13]

*Second*, the DTSA claim fails because the DTSA does not apply to claims of "misappropriation" that amount to a mere breach of *contractual* confidentiality obligations.  At common law, a breach of a contractual confidentiality obligation is not sufficient to support a claim for trade secret misappropriation.  *See Bancorp Servs.*, 2016 WL 4916969, at *9–10 (dismissing misappropriation claim on motion to dismiss, explaining that "misappropriation claims cannot lie where they are simply a restatement of a breach of contract claim" (citation and internal quotation marks omitted)); *A Star Grp.*, 2014 WL 2933155, at *7 (same).  Thus, a claim of misappropriation will not lie unless it "spring[s] from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract."  *A Star Grp.*, 2014 WL 2933155, at *7 (citation and internal quotation marks omitted). There is nothing in the DTSA that suggests that plaintiffs should be able to evade this bar by pleading the same misappropriation claim under the DTSA instead of state law.

As with their quasi-contract and tort claims, Plaintiffs' DTSA claim springs from the same circumstances constituting their breach of contract claim.  Plaintiffs allege that the Getty improperly used or disclosed the allegedly confidential information that they provided under the

---

[13] In Plaintiffs' opposition to the Getty's request for leave to file a motion to dismiss, Plaintiffs argued that the Getty had continued to "use" the Plaintiffs' confidential information because the Getty allegedly had "refused" to return certain photographs of the Collection. (*See* Dkt. 44 at 3 (citing Compl. ¶¶ 71, 139).)  Leaving aside the plausibility of such vague and conclusory language, such an assertion cannot save Plaintiffs' claims because the DTSA does not prohibit the *possession* of trade secrets.  *See* 18 U.S.C. § 1839(5).

NDNCA.  (Compl. ¶ 204.)  And, again, they include no separate or additional allegations in support of their DTSA claim that they do not allege in support of their contract claim.

**IV.      Plaintiffs Fail to Plead Any Cognizable Claims on Behalf of Regulus**

Finally, the threadbare allegations in the Complaint concerning Regulus's involvement in this case are insufficient to state a claim—any claim—for relief.  As an initial matter, we note that it is not even clear which claims Regulus is asserting.  The Complaint clearly asserts a claim as a third-party beneficiary of the NDNCA (Count 2), but only two of the other causes of action in the Complaint even mention Regulus.

With respect to the third-party beneficiary claim, Regulus pleads itself out of court. Regulus is conceded not to be a signatory to the NDNCA.  Plaintiffs allege that Regulus first became involved *four months after* the NDNCA was signed.  (Compl. ¶ 70.)  It is black-letter law that "[a] third party claiming to be a beneficiary of a contract must demonstrate that the parties to the contract intended *at the time of contracting* to confer the benefit claimed."  *Conway v. Icahn & Co.*, 16 F.3d 504, 509 (2d Cir. 1994) (emphasis added).  And "it is the *expressed intent* of the promisee which determines whether the beneficiary is entitled to the benefits of the agreement."  *In re Houbigant Inc.*, 914 F. Supp. 964, 985–86 (S.D.N.Y. 1995).  The Complaint contains no allegation that Phoenix ever expressed an intent to benefit Regulus at the time the NDNCA was signed.  Indeed, Regulus first appears in Plaintiffs' Complaint only four months *after* the NDNCA was signed.  (Compl. ¶ 70.)

Furthermore, a third-party beneficiary cannot recover if another besides the alleged third-party beneficiary may recover under the contract.  *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 988 F. Supp. 367, 373 (S.D.N.Y. 1997) ("Courts have found that third-party status may be established where only the third party may recover if the promisor breaches the contract; conversely, if another besides the third party may recover, beneficiary status is

24

negated.").  There is no possible world in which Phoenix would be unable to recover under the

NDNCA, but Regulus would.

Any remaining claims asserted on Regulus's behalf fail because the Complaint contains

only the most conclusory allegations about how Regulus was involved in the transaction or how

Regulus was injured by the Getty's alleged conduct.  The only relevant allegation is the assertion

that Regulus played some unspecified role in the development of one of the "trade secret deal

structures" that was proposed to the Getty (but the details of which are missing from the

Complaint).  The Complaint fails to establish any plausible basis why the Getty Defendants

owed *Regulus*—as opposed to Phoenix—any duties with respect to that deal structure.

Accordingly, the Complaint does not "nudg[e] [Regulus's] claims across the line from

conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## CONCLUSION

For these reasons, the Getty Defendants respectfully request that the Court grants their

motion to dismiss with prejudice Counts 2–10 of Plaintiffs' Complaint.


Dated:  May 4, 2017                                Respectfully submitted,


                                                   */s/ Luis Li*
                                                   _____

Andrew Cath Rubenstein                             Luis Li
andrew.rubenstein@mto.com                          luis.li@mto.com
MUNGER, TOLLES & OLSON LLP                         Matthew A. Macdonald
560 Mission Street                                 matthew.macdonald@mto.com
Twenty-Seventh Floor                               MUNGER, TOLLES & OLSON LLP
San Francisco, California 94105-2907               350 South Grand Avenue
Telephone:    (415) 512-4000                       Fiftieth Floor
Facsimile:    (415) 512-4077                       Los Angeles, California 90071-3426
                                                   Telephone:    (213) 683-9100
                                                   Facsimile:    (213) 687-3702

*Attorneys for Defendants J. Paul Getty Trust, J. Paul Getty Museum, and Timothy Potts*