# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHOENIX ANCIENT ART, S.A., PET-RARCH LLC a/k/a ELECTRUM, and REGULUS INTERNATIONAL CAPITAL CORP.<br><br>**Plaintiffs,**<br><br>VS.<br><br>J. PAUL GETTY TRUST, J. PAUL GETTY MUSEUM, TIMOTHY POTTS, LIVIO RUSSO, and ARTURO RUSSO<br><br>**Defendants.** | CASE NO. 1:17-cv-00241-ER<br><br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS J. PAUL GETTY TRUST, J. PAUL GETTY MUSEUM, AND TIMOTHY POTTS'S MOTION TO DISMISS COUNTS 2-10 OF THE COMPLAINT<br><br><br>DEMAND FOR JURY TRIAL<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

III.    ARGUMENTS .........................................................................................................5

        A.      Legal Standard ...........................................................................................5

        B.      Plaintiffs' Tort and Quasi-Contract Claims are Not Duplicative of Their Breach of Contract Claim...............................................................6

        C.      Plaintiffs Have Sufficiently Pled Plausible Claims For Relief .................15

        D.      In the Alternative, Request for Leave to Amend Complaint ....................24

IV.     CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

## CASES:

*110 Cent. Park S. Corp. v. 112 Cent. Park S., LLC*,
 970 N.Y.S.2d 681 (N.Y. Sup. Ct. 2013) ................................................................. 7

*Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*,
 784 F. Supp. 2d 296 (S.D.N.Y. 2011)................................................................... 20

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................... 6

*Astroworks, Inc. v. Astroexhibit, Inc.*,
 257 F. Supp. 2d 609 (S.D.N.Y. 2003)..................................................................... 9

*Bayersiche Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*,
 692 F.3d 42 (2d Cir. 2012) (applying New York law) ....................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................... 5

*Carmania Corp., N.V. v. Hambrecht Terrell Int'l*,
 705 F. Supp. 936 (S.D.N.Y. 1989) ............................................................. 6, 7, 13

*Clark-Fitzpatrick v. Long Island R.R. Co.*,
 70 N.Y.2d 382 (1987) ...................................................................................... 7, 10

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
 949 F.2d 42 (2d Cir. 1991)..................................................................................... 6

*Ellington Credit Fund, Ltd. v. Select Portfolio Serv., Inc.*,
 837 F. Supp. 2d 162 (S.D.N.Y. 2011)..................................................................... 9

*Espinosa v. Rand*,
 806 N.Y.S.2d 186 (1st Dept. 2005) ...................................................................... 24

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
 957 F. Supp. 477 (S.D.N.Y. 1997) ...................................................................... 17

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*,
 66 N.Y.2d 38 (1985) ............................................................................................ 23

*Free Country Ltd. v. Drennen*,
 No. 16-CV-8746 (JSR), 2016 WL 7635516 (S.D.N.Y. Dec. 30, 2016) .................. 14

*Freihofer v. Hearst Corp.*,
  65 N.Y.2d 135 (1985) ................................................................................. 17

*Global Packaging Servs., LLC v. Global Printing & Packaging*,
  No. 15-CV-7747 (NSR), 2017 WL 1232731 (S.D.N.Y. Mar. 31, 2017)............................ 12, 16

*Harris v. Coleman*,
  863 F. Supp. 2d 336 (S.D.N.Y. 2012)........................................................... 25

*Henry v. Daytop Village, Inc.*,
  42 F.3d 89 (2d Cir. 1994).......................................................................... 14

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
  679 F. Supp. 2d 395 (S.D.N.Y. 2009).......................................................... 9

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
  725 F. Supp. 712 (S.D.N.Y. 1989) ............................................................. 23

*Key Bank of N.Y. v. Grossi*,
  642 N.Y.S.2d 403 (3rd Dept. 1996).............................................................. 24

*Maalouf v. Salomon Smith Barney, Inc.*,
  No. 02-cv-04770-SAS, 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003)...................... 10, 15, 17

*Mandelblatt v. Devon Stores*,
  521 N.Y.S.2d 672 (1st Dept. 1987) .......................................................... 16, 17, 18

*MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*,
  216 F. Supp. 2d 251 (S.D.N.Y. 2002)........................................................... 14

*Medcalf v. Thompson Hine LLP*,
  84 F. Supp. 3d 313 (S.D.N.Y. 2015)............................................................. 6

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007)...................................................................... 18, 19

*N. Atl. Instruments, Inc. v. Haber*,
  188 F.3d 38 (2d Cir. 1999)........................................................................ 14

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
  102 F.3d 660 (2d Cir. 1996)..................................................................... 23, 24

*Nielsen v. Rabin*,
  746 F.3d 58 (2d Cir. 2014)........................................................................ 6

*Orange County Choppers v. Olaes Enters., Inc.*,
  497 F. Supp. 2d 541 (S.D.N.Y. 2007)...................................................................... 14

*Pappas v. Tzolis*,
  20 N.Y.3d 228 (2012) ............................................................................................... 20

*Peguero v. 601 Realty Corp.*,
  873 N.Y.S.2d 17 ........................................................................................................ 24

*Perry v. City of N.Y.*, No. 13-Civ.-1015 (JMF),
  2013 WL 6641893 (S.D.N.Y. Dec. 17, 2013) ......................................................... 22

*Polonetsky v. Better Homes Depot*,
  97 N.Y.2d 46 (2001) ................................................................................................. 24

*Scutti Enters., LLC v. Park Place Ent. Corp.*,
  322 F.3d 211 (2d Cir. 2003)...................................................................................... 16

*Sidney Frank Imp. Co., Inc. v. Beam, Inc.*,
  998 F. Supp. 2d 193 (S.D.N.Y. 2014).................................................................. 11, 19

*Sommer v. Fed. Signal Corp.*,
  79 N.Y.2d 540 (1992) ........................................................................................ 7, 8, 14

*St. John's Univ., N.Y. v. Bolton*,
  757 F. Supp. 2d 144 (E.D.N.Y. 2010) ...................................................................... 15

*Transcience Corp. v. Big Time Toys, LLC*,
  50 F. Supp. 3d 441 (S.D.N.Y. 2014)......................................................................... 14

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
  455 Fed. Appx. 102 (2d Cir. 2012) ........................................................................... 17

*W. Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc.*,
  761 F. Supp. 1041 (S.D.N.Y. 1991).......................................................................... 24

## STATUTES:

18 U.S.C. § 1831............................................................................................................. 6, 21
18 U.S.C. § 1832(a) .............................................................................................................. 21
18 U.S.C. § 1839.............................................................................................................. 13, 21

## RULES:

FED. R. CIV. P. 8(a) ................................................................................................. 14, 15, 22
FED. R. CIV. P. 12(b)(6) ....................................................................................................... 5, 6

# I.   INTRODUCTION

The Getty Defendants[1] and the Russo Defendants[2] breached contractual, quasi-contractual, and tort duties to deprive Plaintiffs of compensation for years of work regarding the Torlonia family's collection of Roman and Greek Sculptures.[3] The Sculptures are part of the largest privately-owned collection of statues in the world and are part of the "crown jewels" of Italian culture. Plaintiffs expended years of labor, professional skill, and expertise in evaluating and cultivating the Sculptures for sale, exhibition, or any other commercial transfer of possession outside of Italy. Plaintiffs designed and provided the legal and practical means to transfer the Sculptures in accordance with Italian law, and developed necessary relationships with Italian officials and the Torlonia family to make that possible.

The Getty Defendants now attempt to avoid liability for Plaintiffs' tort and quasi-contract claims (and all of Regulus's claims) by characterizing this case as a simple contract action. The Getty Defendants, however, at the same time claim the contract includes nothing obligating them to compensate Plaintiffs and reserve the option to challenge the enforceability and scope of the contract. The Getty Defendants cannot do both.

Plaintiffs properly allege the Getty Defendants engaged in multiple and distinct unlawful acts: breach of contract, fraud, misappropriating Plaintiffs' trade secrets and goodwill with the Torlonia family and Italian officials, and exercising wrongful control of Plaintiffs' property—as part of a multifarious enterprise to gain access to the Sculptures using the Plaintiffs' work but without paying them for it. Such a nefarious enterprise supports multiple causes of action because it violates multiple legal duties and multiple rights owed to Plaintiffs. Although

---

[1] "Getty Defendants" refer collectively to Getty and Potts, as defined below.
[2] "Russo Defendants" refer collectively to Defendants Livio Russo and Arturo Russo.
[3] "Torlonia Sculptures" or "Sculptures" refers to TORLONIA SCULPTURES defined in the Complaint.

Plaintiffs' allegations share some similar facts, each cause of action implicates different duties and gives rise to a different remedy. Plaintiffs' claims against the Getty Defendants are proper and the Getty Defendants' Motion to Dismiss should fail.

## II.    FACTUAL BACKGROUND

Electrum[4] invested years of time and labor cataloguing the Torlonia Sculptures and preparing them for sale, transfer, or commercialization outside of Italy, developed trade secrets in catalogues, works, deal structures, and insurance to effectuate such commercialization, and cultivated relationships and goodwill with both the Torlonia family and Italian officials. Compl.[5] ¶¶ 52-55. Electrum's efforts were crucial to the Getty Defendants due to the Getty[6] and its directors' long-standing history with the Italian government stemming from the Getty's prior acquisition and subsequent return of antiquities to Italy. *Id.* at ¶¶ 18-35.

In Spring 2013, Electrum met with Potts[7] to discuss, without specifics, a potential deal involving the Torlonia Sculptures. *Id.* at ¶¶ 56-61. At that meeting and thereafter, Potts made representations and oral agreements that induced Electrum to enter into the NDNCA[8] and continue their efforts.

The NDNCA obligated the Getty Defendants to (1) maintain the confidentiality of information disclosed under the NDNCA, return information upon request, and use information only to evaluate a possible transaction involving Electrum; and (2) refrain from any direct or indirect contact with the Torlonia family or any party representing or related to the Torlonia family, except through Electrum. *Id.* at ¶¶ 62-68; NDNCA, p. 2. The Getty Defendants' receipt

---

[4] "Electrum" refers to Plaintiff Petrarch LLC a/k/a Electrum.
[5] "Compl." or "Complaint" refers to Plaintiffs' Original Complaint (Dkt. No. 1).
[6] "Getty" refers collectively to Defendants J. Paul Getty Trust and J. Paul Getty Museum.
[7] "Potts" refers to Defendant Timothy J. Potts.
[8] "NDNCA" refers to the Non-Disclosure/Non-Circumvention Agreement attached as Exhibit A.

of confidential information was strictly "for the purpose of evaluating a possible transaction" in which Electrum would necessarily be a party. NDNCA, p. 1-2.

The NDNCA did not provide terms for compensation but rather contemplated a future "proposed transaction." *Id.* at p. 1. That proposed transaction was Plaintiffs' brokered transfer or sale of the Sculptures and concomitant compensation for their efforts. *E.g.*, Compl. ¶¶ 103-104.

On November 8, 2013, Potts met with Electrum and Regulus[9] in Manhattan. *Id.* at ¶ 70. Electrum and Regulus explained that Regulus could provide a trade secret deal structure to facilitate a transfer of possessory rights in the Sculptures to the Getty that complied with Italian law. *Id.* From November 2013 through at least July 2015, Plaintiffs facilitated a deal between the Getty Defendants and the Torlonia family by, *inter alia*, creating and providing thousands of photographs to the Getty Defendants, creating and providing catalogues including detailed research into the provenance of the Sculptures to the Getty Defendants, facilitating communications through their exclusive access to the Torlonia family, developing trade secret deal structures, utilizing their knowledge of Italian law and politics, and utilizing their connections and professional reputations to benefit the Getty Defendants. *Id.* at ¶¶ 71-112.

From the beginning of the engagement, the Getty Defendants made multiple and repeated representations of their intent to compensate Plaintiffs for their labors, skills, and goodwill exerted for the benefit of Getty. These representations were reasonably relied upon by Electrum to continue disclosing information to the Getty and continuing their work toward a transaction. Electrum's negotiations with the Getty Defendants began with discussions with Potts regarding Electrum's substantial efforts to prepare a transaction that would allow the Getty to gain possession of the collection, either by sale or other means, and Potts's interest "in a deal through

---

[9] "Regulus" refers to Plaintiff Regulus International Capital Corp.

which GETTY could acquire an interest in that collection." *Id.* at ¶¶ 57-58. The subsequently executed NDNCA was premised on those discussions and a proposed transaction for a transfer of possession of the Torlonia Sculptures with compensation to Plaintiffs. *Id.* at ¶¶ 62-68; NDNCA, p. 1. Discussions of the proposed deal and compensation to Plaintiffs continued into July 2015, as evidenced by at least the Getty's expressed interest in a proposed $350 million to $550 million sale with a 22% commission to Plaintiffs. *Id.* at ¶¶ 103-104. Plaintiffs relied on these repeated and ongoing representations that they would be compensated by continuing to provide their efforts to consummate a deal. *See, e.g., id.* at ¶¶ 71, 92.

The Getty Defendants also intentionally interfered with Plaintiffs' business relationship with the Torlonia family. The Getty Defendants maliciously deprived Plaintiffs of the benefits of that relationship by cutting Plaintiffs out of any deal with the Torlonias—a deal in which Plaintiffs would have been entitled a separate commission. *Id.* at ¶¶ 113-136, 174.[10] But for the Plaintiffs' connections to the Torlonias, the Getty Defendants had little to no chance to acquire possession of the Torlonia Sculptures because of the Getty's prior activities with regard to Italian antiquities had made the Getty Defendants *personae non grata* with Italian officials. Acts supporting this cause of action include the Getty Defendants' misrepresentation of intent to compensate Plaintiffs, *id.* at ¶¶ 57-68, 103-120, misappropriation of trade secrets, labors, skills, and goodwill, *id.* at ¶¶ 187, 208, refusal to return the products of Plaintiffs' labors, *id.* at ¶ 139, and conspiracy to cut Plaintiffs out of any deal with the Torlonias, *id.* at 119-120.

Additionally, the Getty Defendants unfairly competed with Plaintiffs—the Getty Defendants misappropriated the product of Plaintiffs' skill with Italian law and valuable

---

[10] *E.g.*, "DEFENDANTS conspired without PLAINTIFFS' knowledge or involvement regarding the ultimate sale or transfer of the TORLONIA SCULPTURES to the GETTY… to cut PLAINTIFFS out of the deal so they would not have to pay PLAINTIFFS any commission …."

goodwill with the Torlonia family and Italian officials—thereby obtaining the benefits of Plaintiffs' services and using it to cut Plaintiffs out of a deal with the Torlonias. *Id.* at ¶¶ 55, 82, 99-102, 109, 111-112, 115, 125, 179, 191-192.

The Getty Defendants were unjustly enriched by Plaintiffs' efforts and services outside the scope of the NDNCA, including, *inter alia*, Plaintiffs' relationships and goodwill with Italian officials and Plaintiffs' skills with and knowledge of Italian law and politics. *Id.*[11]

Finally, the Getty Defendants have converted Plaintiffs' property by exercising wrongful control and possession of Plaintiffs' trade secrets and the thousands of photographs and catalogue created by Plaintiffs of the Torlonia Sculptures, which is a proprietary compilation of information Plaintiffs created and took measures to keep confidential, in derogation of Plaintiffs' possessory rights that exist independent of the NDNCA. *Id.* at ¶¶ 71, 92, 139, 198-200. The Getty Defendants have concealed, and to this day continue to conceal, such property from Plaintiffs in violation of the Defend Trade Secrets Act.

## III.    ARGUMENTS

### A.    Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) fails where the pleading alleges facts that, taken as true, are sufficient "to raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts examine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

---

[11] *E.g.*, "Demonstrating how far PLAINTIFFS had developed the relationship between the GETTY and the Italians, the Prince's grandson visited the GETTY during a period when the GETTY was featuring an exhibition … includ[ing] the controversial and contested Victorious Youth."

evidence to support the claims." *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 320 (S.D.N.Y. 2015) (internal quotes omitted). "When ruling on a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). The Court may consider documents integral to the complaint, such as the NDNCA. *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

### B.   Plaintiffs' Tort and Quasi-Contract Claims are Not Duplicative of Their Breach of Contract Claim

Plaintiffs' claims for intentional interference with an advantageous business relationship, fraud, unjust enrichment, unfair competition, conversion, and violation of the DTSA[12] are independent of and distinct from their breach of contract claim.[13] "New York law allows concurrent recovery in tort and contract so long as a defendant violates distinct legal duties: one that arises from the contract at issue, and one that arises independently." *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989). "Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Bayersiche Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (applying New York law). A plaintiff may maintain claims to redress breaches of a duty that "spring[s] from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the

---

[12] "DTSA" refers to the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*
[13] Plaintiffs acknowledge that their claim for breach of implied covenant of good faith and fair dealing will be merged, under New York law, into their claim for breach of contract. For clarity, Plaintiffs explicitly maintain their right to recover for any breach of the implied covenant of good faith and fair dealing as part of their breach of contract claim and do not waive such rights by acknowledging the merger into Plaintiffs' breach of contract claim.

contract." *Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987). This is because contract and tort law have different purposes:

> The law of contracts is meant to facilitate voluntary economic exchange. Plaintiffs who successfully sue for breach of contract are entitled to damages providing them with the benefit of the bargains they and the defendants chose to strike—i.e., to be placed in the positions they would have enjoyed had the parties' expectations panned out. The law of torts, in contrast, has different goals: to deter people from inflicting harm when they behave unreasonably, and to compensate those injured by restoring them to the state they occupied before they suffered harm.

*Carmania Corp.*, 705 F. Supp. at 938.

Thus, where a party has suffered injury that contract law cannot redress, the party may recover outside the contract. *110 Cent. Park S. Corp. v. 112 Cent. Park S., LLC*, 970 N.Y.S.2d 681, 688 (N.Y. Sup. Ct. 2013). For example, dismissal of a negligence claim was improper where the plaintiff alleged "that it detrimentally relied on [defendant's] representations" because "'[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship' in this case." *Bayersiche*, 692 F.3d at 59 (quoting *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992)). "This legal duty, though *assessed* largely on the standard of care and the other obligations set forth in the contract, would *arise* out of the independent characteristics of the relationship between [plaintiff] and [defendant]." *Id.* (emphasis in original).

The NDNCA constrained the behavior of the parties as they evaluated and developed a potential transaction and required that any transaction involving the Getty Defendants and Torlonia family include the Plaintiffs. *See* NDNCA, p. 1-2. Plaintiffs are mandatory parties to any such transaction because the NDNCA restricted the Getty Defendants' access to the Torlonia family. *Id.* As the Getty Defendants note, the NDNCA does not contain any terms for paying Plaintiffs' commission. *See, e.g.,* Motion, p. 12. It does not provide a specific deal structure to

define the parties' rights in that future transaction. Nor does the NDNCA refer to any services, benefits, or labor Plaintiffs provided to the Getty Defendants to facilitate the proposed transaction, or how Plaintiffs would be compensated for those efforts. *See* NDNCA, p. 1-2.

The Getty Defendants' express and undisputed representations of their intent to compensate Plaintiffs as part of the proposed transaction both before and after executing NDNCA, and the services, benefits, and tangible items that Plaintiffs provided to the Getty Defendants to facilitate that transaction created legal relationships between Plaintiffs and the Getty Defendants that, though related to the NDNCA, imposed separate legal duties upon the Getty Defendants. Plaintiffs' non-contract claims encompass the Getty Defendants' wrongful conduct beyond breaching the NDNCA. Those clams redress the legal duties violated by the Getty Defendants that arose outside the NDNCA.

In Plaintiffs' breach of contract claim, Plaintiffs seek to recover the benefit of the bargain—to be part of any future deal and the value of their confidential information and exclusive relationship with the Torlonia family. A demand for compensation and to recoup the value of Plaintiffs' services arises outside the NDNCA because the NDNCA has no provision for compensation. *See* Exhibit A.

The Getty Defendants are also contesting the validity and enforceability of the contract. In response to the Court's question, "Is there a valid contract?" the Getty Defendants specifically stated, "I want to be very clear we don't intend to waive at this point." Pre-Hrg. Trans. 22:11-19. In the Motion, the Getty Defendants claim Plaintiffs' breach of contract claim is "meritless" and specifically claim Plaintiffs' commission is outside the scope of the contract. Motion, p. 1-2. Yet, throughout the Motion, the Getty Defendants maintain that Plaintiffs cannot bring non-contract claims to recover compensation, because such claims are merely a "repackage" of their contract

claim. *E.g., id.* at p. 11. Thus, throughout their Motion, the Getty Defendants attempt to deprive Plaintiffs of the right to bring non-contract claims, by arguing those claims are duplicative of breach of contract, while simultaneously maintaining a right to then challenge the validity and scope of the contract. The Getty Defendants cannot have it both ways: they cannot attempt to dispense with Plaintiffs' non-contract claims only to turn around and seek to dispose of that contract as invalid. Such a scheme challenges basic notions of fair play and highlights the Getty Defendants' ongoing efforts to deprive Plaintiffs of any benefits for their significant efforts.

 ***Fraud.*** Plaintiffs' fraud claim against the Getty Defendants redresses "misrepresentations collateral or extraneous to" the NDNCA and is not duplicative of Plaintiffs' breach of contract claim. *Ellington Credit Fund, Ltd. v. Select Portfolio Serv., Inc.*, 837 F. Supp. 2d 162, 198 (S.D.N.Y. 2011)); *see also Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616-17 (S.D.N.Y. 2003). Facing a motion to dismiss, Plaintiffs do not need to prove which representations were collateral to the NDNCA; instead, they need only allege representations that *may* have been collateral. *See Astroworks*, 257 F. Supp. 2d at 617 ("At this early stage, it is impossible to know which promises comprised the agreement and which were collateral. [Plaintiff] has *alleged* promises that *may* have been collateral. That being so, there is no basis to dismiss the claim."); *see also IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 410 (S.D.N.Y. 2009) (holding fraud allegations collateral to contract where nothing in contract spoke to subject matter of alleged misrepresentations).

 Plaintiffs have alleged Defendants made misrepresentations collateral to the NDNCA (including but not limited to representations that predate the NDNCA), ***and*** Plaintiffs alleged representations that the Getty Defendants ***admit*** are collateral to the NDNCA. Specifically, Plaintiffs alleged that the Getty Defendants fraudulently misrepresented that they would

"compensate PLAINTIFFS for facilitating a deal with the Torlonia family." Compl. ¶ 179. As Getty Defendants repeatedly remind the Court, the NDNCA does not include any terms defining Plaintiffs' compensation. *See* Motion, pp. 2, 5; Pre-Hrg. Conf. Trans. 24:20. Because the Getty Defendants misrepresented their intent to compensate Plaintiffs for facilitating a deal with the Torlonia family collaterally to the NDNCA, Plaintiffs may assert fraud.

 ***Unjust Enrichment.*** Similarly, Plaintiffs' quasi-contractual claim arises from, and seeks relief for, facts and legal duties extraneous to the NDNCA. By its nature, unjust enrichment "is premised on the notion that where principles of contract law are inadequate to compensate an unjustly deprived party, a court should resort to principles of equity." *Maalouf v. Salomon Smith Barney, Inc.*, No. 02-cv-04770-SAS, 2003 WL 1858153, at *6 (S.D.N.Y. Apr. 10, 2003). Accordingly, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events ***arising out of the same subject matter***." *Clark-Fitzpatrick*, 70 N.Y.2d at 388 (emphasis added). The contrapositive is true: if the subject matter of the unjust enrichment claim is not covered by the contract, the unjust enrichment claim is viable. This applies the basic principle that equity begins where the law ends. Plaintiffs performed compensable work that benefitted the Getty Defendants that is not addressed by the NDNCA. The equitable remedy of unjust enrichment fills the gap.

 Plaintiffs alleged that the Getty Defendants were unjustly enriched by Plaintiffs' relationship with the Torlonia family, Plaintiffs' ability to navigate Italian politics, and Plaintiffs' skills, expertise, and ability to apply Italian law. Compl. ¶ 187. Plaintiffs alleged that they provided numerous specific services to the Getty Defendants, including but not limited to managing appropriate communications and inspection visits, *id.* at ¶¶ 74-81, and utilizing Plaintiffs' relationships and goodwill with Italian officials to benefit the Getty Defendants, *id.* at

¶¶ 82, 98-101, 109. Plaintiffs provided substantial services to the Getty Defendants beyond providing confidential information under the NDNCA, without which the Getty Defendants would never have gained access to the Torlonia Sculptures and for which the Getty Defendants have refused to compensate Plaintiffs.

*Unfair Competition.* Plaintiffs' unfair competition claim also seeks relief for the Getty Defendants' wrongful acts outside the NDNCA. Two unfair competition claims are cognizable under New York law: "'palming off' and misappropriation." *Sidney Frank Imp. Co., Inc. v. Beam, Inc.*, 998 F. Supp. 2d 193, 208 (S.D.N.Y. 2014). Misappropriation requires that "a plaintiff must allege that the defendant: (1) misappropriated the plaintiff['s] labors, skills, expenditures, or goodwill; and (2) displayed some element of bad faith in doing so." *Id.* at 209.

Here, Plaintiffs alleged not only that the Getty Defendants have misappropriated Plaintiffs' confidential and proprietary information, which was disclosed under and covered by the NDNCA, but also that the Getty Defendants have misappropriated Plaintiffs' "knowledge and *application* of Italian law and the *relationships* necessary to bring about a sale or transfer of the TORLONIA SCULPTURES." Compl. ¶ 191 (emphasis added). The NDNCA covers confidential information that Plaintiffs disclosed to the Getty Defendants but contains no provisions as to Plaintiffs' application (i.e., labor and/or skill) of such knowledge or Plaintiffs' relationships (i.e., goodwill) with Italian officials. Thus, in addition to misappropriating Plaintiffs' information, which may overlap with breach of the NDNCA, the Getty Defendants have also misappropriated Plaintiffs' labor, skill, and/or goodwill, which are collateral to the NDNCA and any breach thereof. *See, e.g.,* Compl. ¶¶ 109, 112, 115, 120, 138, 187 (describing, *inter alia*, Plaintiffs efforts with Italian officials to facilitate acquisition and/or exhibition of the

Torlonia Sculptures). As such, Plaintiffs' unfair competition claim arises from facts, and seeks

relief, distinct and independent from their contract claim.

*Intentional Interference.* Plaintiffs' claim for intentional interference with an

advantageous business relationship is not duplicative of their contract claim. Plaintiffs have

specifically alleged that the Getty Defendants acted "intentionally and with malice … to disrupt

the relationship between the Torlonia family and PLAINTIFFS." Compl. ¶ 174. This cause of

action relates to Plaintiffs' relationship with the Torlonia family, rather than the Getty.

Specifically, Plaintiffs were entitled to a transaction or deal commission from the Torlonia

family for any transaction relating to the Torlonia Sculptures. The Getty Defendants' action,

irrespective of their contractual duties to Plaintiffs, harmed this separate right of Plaintiffs.

A claim for intentional interference requires culpable conduct on the part of the defendant

that amounts to either a crime or an independent tort, which necessarily exceeds the bounds of a

contract action. *Global Packaging Servs., LLC v. Global Printing & Packaging*, No. 15-CV-

7747 (NSR), 2017 WL 1232731, at *5 (S.D.N.Y. Mar. 31, 2017) (cite omitted). Plaintiffs alleged

facts showing the Getty Defendants' malice and intent to harm Plaintiffs, including but not

limited to the Getty Defendants' ongoing and willful refusal to cease contact with the Torlonia

family except through the Plaintiffs, their refusal to return the products of Plaintiffs' labors, such

as the catalogue of the Torlonia Sculptures, depriving Plaintiffs of the benefits thereof, *id.* at ¶

139, their extended misrepresentations of an intent to compensate Plaintiffs, *id.* at ¶¶ 57-68, 103-

120, and their misappropriation of the benefits of Plaintiffs' trade secrets, labors, skills, and

goodwill, *id.* at ¶¶ 187, 208. This conduct is the kind of unreasonable behavior that tort law is

designed to redress. *See Carmania Corp.*, 705 F. Supp. at 938. For these reasons, Plaintiffs'

intentional interference claim is predicated on different facts and seeks to redress the violation of

an independent legal duty—the duty to refrain from malicious harm—not addressed by Plaintiffs' contract claim.

   ***Conversion.*** Plaintiffs' claim for conversion arises from different facts than their breach of contract claim because Plaintiffs had, and have, an independent possessory right to the converted property that is not contingent upon the NDNCA. Compl. ¶¶ 53-54, 61, 69, 71, 92, 198. The NDNCA required the Getty Defendants to maintain the confidentiality of information provided under the NDNCA and return such information upon request. NDNCA, p. 1-2. The Getty Defendants' obligation not to physically take and maintain possession of the original and dated catalogue or thousands of photographs created by Plaintiffs does not inhere solely in the NDNCA. Even if they had not entered into the NDNCA, the Getty Defendants would still have no right to the converted property. Plaintiffs' Complaint specifically alleges facts supporting Plaintiffs' independent right to the converted property—including but not limited to Plaintiffs' independent development and creation of the catalogue of Torlonia Sculptures. *See* Compl. ¶¶ 52-55. The Getty Defendants have that property with no right to possess it. Thus, they converted Plaintiffs' property by exercising wrongful possession and control over it. As such, Plaintiffs' claim for conversion is not merely a restatement of its claim for breach of contract but asserts violation of a separate legal duty for which recovery may be sought.

   ***Violation of the DTSA.*** Finally, a necessary element of any DTSA action is that the Plaintiffs maintain secrecy regarding their trade secrets, which is frequently established through contractual obligations. *See* 18 U.S.C. § 1839 (requiring "reasonable measures to keep such information secret" to establish a trade secret); s*ee, e.g., N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 45 (2d Cir. 1999) (trade secrets secured by confidentiality agreements); *Free Country Ltd. v. Drennen*, No. 16-CV-8746 (JSR), 2016 WL 7635516, at *1-6 (S.D.N.Y. Dec. 30, 2016)

(DTSA trade secrets protected by confidentiality agreement). The DTSA contains a legal duty beyond the duty of care that the NDNCA required; Plaintiffs' claim cannot fail only because the NDNCA contains similar duties. *Sommer,* 79 N.Y.2d at 551 ("A legal duty independent of contractual obligations may be imposed by law as incident to the parties' relationship.").

**Alternative Pleading.** As this Court has noted, "even though Plaintiffs may not ultimately *recover* under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to *plead* such claims in the alternative." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 452-453 (S.D.N.Y. 2014) (emphasis in original). While the ultimate recovery, upon summary judgment or trial on the merits, may be limited, pleading in the alternative under Fed. R. Civ. P. 8(a) is permitted. *See, e.g., Transcience*, 50 F. Supp. 3d at 452-53; *Orange County Choppers v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 557 (S.D.N.Y. 2007); *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2002) *overruled on other grounds by Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003); *see also Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) ("[A] plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency.").

Contrary to the Getty Defendants' argument, Plaintiffs need not admit the NDNCA is unenforceable. Where a defendant, like the Getty Defendants here, intends to assert that a contract does not directly apply to the dispute, alternative pleading is proper:

> In defense of the action, however [defendant] intends to argue that the transactions in dispute … occurred after the [contracts] terminated …. It is [this] defense that could conceivably re-characterize plaintiff's breach of contract claim into a claim for unjust enrichment. If the services rendered by [plaintiff] to [defendant] are found to be outside the scope of the Agreements, [plaintiff's] breach of contract would necessarily fail. But [plaintiff] may still have a claim for unjust enrichment in the absence of a governing contract.

*Maalouf*, 2003 WL 1858153, at *7. The Getty Defendants have not waived any challenge to the validity of the NDNCA and have expressly stated that any compensation due to Plaintiffs is outside the scope of the NDNCA. Pre-Hrg. Conf. Trans., 22:18-19 ("I want to be very clear we don't intend to waive at this point"); Motion, p. 2 ("Among other challenges is the fact that the Getty has never agreed to pay Plaintiffs a penny."). As in *Maalouf*, the Getty Defendants hope to retain the option to assert defenses against the NDNCA's validity or scope in the future while claiming Plaintiffs cannot plead in the alternative. Plaintiffs should not be required to select a remedy at this stage, before any discovery or defenses are asserted. *See St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010) (citing Rule 8 to deny motion to dismiss, collecting cases in 2d Cir. and S.D.N.Y., and stating "Many courts dismissing tort and unjust enrichment claims as duplicative of contract claims have done so on a motion for summary judgment, with the benefit of a full factual record").

### C.   Plaintiffs Have Sufficiently Pled Plausible Claims For Relief

Although the Getty Defendants spend most their Motion attacking Plaintiffs' claims as duplicative, they also assert *pro forma* challenges to the sufficiency of Plaintiffs' 210-paragraph Complaint. That Complaint fully supports a reasonable inference that the Getty Defendants are liable for Plaintiffs' claims of breach of third-party beneficiary contract, intentional interference with an advantageous business relationship, fraud, unfair competition, conversion, and violation of the DTSA.[14]

***Intentional Interference.*** Plaintiffs pled a plausible claim for intentional interference with an advantageous business relationship. "To state a claim for tortious interference with

---

[14] Getty Defendants have not challenged the sufficiency of Plaintiffs' breach of contract claim or their unjust enrichment claim; they have challenged the unjust enrichment claim only by claiming it conflicts with Count One of the Complaint. Motion, § II.

business relations, four conditions must be met: (i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." *Scutti Enters., LLC v. Park Place Ent. Corp.*, 322 F.3d 211, 215 (2d Cir. 2003); *see also Global Packaging Servs.*, 2017 WL 1232731, at *4.

The Getty Defendants do not challenge the facts pled that show Plaintiffs had a business relationship with the Torlonia family, Compl. ¶¶ 52-55, 172, that Defendants interfered with that relationship, *id.* at ¶¶ 113, 137, 174, and that such interference injured the relationship, *id.* at ¶¶ 137, 175. The Getty Defendants only claim that *wrongful* conduct is lacking, *see* Motion, p. 15-16. But the wrongful conduct element is present here because Plaintiffs alleged a prima facie tort—*i.e.*, "that the defendant engage[d] in conduct for the sole purpose of inflicting intentional harm on plaintiffs." *Global Packaging Servs.*, 2017 WL 1232731, at *5 (internal quotes omitted); *see also Mandelblatt v. Devon Stores*, 521 N.Y.S.2d 672, 676 (1st Dept. 1987). Plaintiffs specifically alleged that the Getty Defendants acted "intentionally and with malice [to] cut PLAINTIFFS out of the continued relationship with the Torlonia family." [15] Compl. ¶ 174. This allegation is supported by allegations regarding: (a) the Getty Defendants' ongoing and willful refusal to return the products of Plaintiffs' labors, such as the catalogue of the Torlonia Sculptures, which deprives Plaintiffs of the benefits thereof, *id.* at ¶ 139, (b) Defendants' extensive misrepresentations of their intent to compensate Plaintiffs, *id.* at ¶¶ 57-68, 103-120,

---

[15] Plaintiffs would note that this Court has held that "[a] plaintiff does not need to describe a defendant's motivation at the pleading stage." *Maalouf*, 2003 WL 1858153, at *8. "The question of intent is highly fact-based and often involves sifting through circumstantial evidence. Such evidence generally becomes available through the course of discovery." *Id.*

and (c) Defendants' misappropriation of the benefits of Plaintiffs' trade secrets, labors, skills, and goodwill, *id.* at ¶¶ 187, 208.

The Defendants misleadingly argue that intentional interference requires conduct directed towards the party with whom the plaintiff had or sought to have a relationship, thereby claiming that the conduct must be wrongful as to the third party. Motion, p. 15-16 (citing *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed. Appx. 102, 107 (2d Cir. 2012)). *Valley Lane* does not support this proposition, but instead requires that tortious conduct directed towards the plaintiff cause the third party to "sever its business relationship with the [plaintiff.]" *Id.* Other cases recite the same requirement of wrongful conduct directed towards the plaintiff. *See, e.g., Mandelblatt*, 521 N.Y.S. at 676 (citing, *inter alia*, *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142-43 (1985)).  Simple communication or contact with a third party, though not harmful to that third party, can give rise to a claim for intentional interference if such communication or contact is wrongful. *See Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 n.4 (S.D.N.Y. 1997).

The Getty Defendants directly communicated with the Torlonia family as part of their intentional and malicious efforts to cut Plaintiffs out of the continued relationship with the Torlonia family. Compl. ¶¶ 119-120. Thus, Plaintiffs have sufficiently alleged both that the Getty Defendants engaged in wrongful conduct—namely, a prima facie tort[16] against Plaintiffs—which

---

[16] Regarding any argument that Plaintiffs have not pled special damages, "[w]hile it is true that a party must allege special damages to plead an independent cause of action for prima facie tort successfully, no allegation of special damages is required to make out a claim for intentional interference with precontractual relations or prospective economic advantage for, in such case, the measure of damages is the loss suffered by the plaintiff, including the opportunities for profits on business diverted from it." *Mandelblatt*, 521 N.Y.S.2d at 676 (internal cites and quotes omitted).

involved direct contact with the Torlonia family. For these reasons, Plaintiffs have sufficiently pled a plausible claim for intentional interference.

*Fraud.* Plaintiffs pled a plausible claim for fraud by alleging facts supporting the inference that the Getty Defendants misrepresented an intent to compensate Plaintiffs for facilitating a deal with the Torlonia family. Fraud requires "that the defendant knowingly or recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result." *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

The Complaint alleges that the Getty Defendants made misrepresentations regarding their intent to compensate Plaintiffs for facilitating a deal between the Getty Defendants and the Torlonia family. Compl. ¶ 179. Plaintiffs further allege communications with Potts that induced Plaintiffs to enter into the NDNCA, the Getty Defendants' affirmative interest in a deal structure proposed in March 2015 with a 22% commission to Plaintiffs, and ongoing deal structure negotiations that continued through July 2015. *Id.* at ¶¶ 57-61, 103-110; NDNCA, p. 1. These allegations provide the nature of the representation: future compensation. *Id.* at ¶ 179. They identify the speakers: Potts and Stephen Clark as Getty's agents. *Id.* at ¶¶ 57-61, 103-110. The date of the misrepresentations is described: from at least July 12, 2013 when the NDNCA was signed through at least July 2015 during the ongoing deal structure negotiations, during which they discussed a commission to Plaintiffs (approximately 22%). *Id.* The location of the representations is alleged: at meetings and in electronic communications between Plaintiffs and the Getty Defendants in New York, California, and Italy. *Id.* Finally, the Complaint shows why the representations were false and the Getty Defendants' knowledge of or reckless disregard of that falsity: within a month of Plaintiffs' meeting with Potts in July 2015 and providing

additional information to facilitate the proposed deal, which included a commission to Plaintiffs, the Getty Defendants had arranged private meetings with the Torlonia family as part of a concerted effort to circumvent the Plaintiffs, gain access to the Torlonia Sculptures and reach a deal that did not include Plaintiffs receiving any compensation for their years of work. *Id.* at ¶¶ 103-121. Accordingly, Plaintiffs have sufficiently pled fraud against the Getty Defendants.

*Unfair Competition.* Plaintiffs have further sufficiently pled a plausible claim for unfair competition through misappropriation because Plaintiffs alleged that the Getty Defendants acquired the fruits of Plaintiffs' labors through misrepresentations, including but not limited to their misrepresentation that they intended to compensate Plaintiffs for their services in facilitating a transaction between the Getty Defendants and the Torlonia family. Compl. ¶¶ 109, 112, 115, 120, 138, 187. "To state a claim for the misappropriation theory of unfair competition, a plaintiff must allege that the defendant: (1) misappropriated the plaintiff['s] labors, skills, expenditure, or goodwill; and (2) displayed some element of bad faith in doing so." *Sidney Frank*, 998 F. Supp. 2d at 209 (internal quotes omitted) (brackets in original).

Plaintiffs expended extensive skill, labor, and goodwill, for the Getty Defendants' benefit. The Getty Defendants misappropriated these benefits by, *inter alia*, misrepresenting their intent to compensate Plaintiffs while conspiring to obtain access to the Torlonia Sculptures without Plaintiffs' involvement. *Id.* at ¶¶ 103-120, 138-139. Further, the Getty Defendants' bad faith is clear: they swiftly went from discussing a possible 22% commission for Plaintiffs' efforts to cutting Plaintiffs out of the deal and have wrongfully withheld the fruits of Plaintiffs' labors, such as the catalogue and thousands of photographs created by Plaintiffs. *Id.* As such, Plaintiffs have sufficiently pled a plausible claim for unfair competition.

*Conversion.* Plaintiffs have sufficiently pled a plausible claim for conversion. Plaintiffs alleged that the Getty Defendants have exercised and continue to exercise control over physical documents in which intangible rights have merged and/or electronic files, indistinguishable from physical documents, in which tangible rights have merged. "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) (internal quotes omitted). "[I]ntangible rights can form the basis of conversion damages when the converted property is a document into which intangible rights have merged." *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011); *see also* Restatement (Second) of Torts, § 242.

Plaintiffs have a current and possessory right in and to "thousands of photographs of the TORLONIA SCULPTURES," "the catalogue PLAINTIFFS prepared of the TORLONIA SCULPTURES," and documentary trade secrets, all of which necessarily exist as documents into which intangible rights have merged. Compl. ¶¶ 71, 198. Plaintiffs alleged that these tangible items were provided to the Getty Defendants, *id.* at ¶¶ 71, 92, and that the Getty Defendants have refused to return the items to Plaintiffs, *id.* at ¶ 71, 139. Because Plaintiffs alleged that the Getty Defendants are exercising dominion over property in derogation of Plaintiffs' alleged possessory rights, Plaintiffs have properly stated a claim for conversion.

*Violation of DTSA.* Plaintiffs properly pled their DTSA claim. 18 U.S.C. § 1831 *et seq.* Plaintiffs alleged that the Getty Defendants have, and are, engaged in ongoing violations of the DTSA that have continued *since* Congress enacted that law. Despite the Getty Defendants' attempt to evade the scope of the DTSA, the conduct it prohibits is not limited to "'acquisition,'

'disclosure,' or 'use of a trade secret.'" Motion, p. 22. Instead, the DTSA also prohibits *concealing* a trade secret. 18 U.S.C. § 1832(a).

Plaintiffs alleged that they created the catalogue of the Torlonia Sculptures, Compl. ¶ 53, which they kept under reasonable security measures to maintain its confidentiality, *id.* at ¶ 54, because the catalogue derived independent economic value therefrom, *id.* at ¶ 193. *See* 18 U.S.C. § 1839(3) (definition of "trade secret"). Further, Plaintiffs have alleged that they provided said catalogue to the Getty Defendants in reliance on the latter's oral representations and the NDNCA. *Id.* at ¶¶ 69, 92. The Complaint alleges that the Getty Defendants appropriated and utilized said catalogue and have concealed it from Plaintiffs, depriving Plaintiffs of the benefits thereof, by refusing to return the catalogue. *Id.* at ¶¶ 92, 193, 139. Concealment continued and persisted after the effective date of the DTSA—when Plaintiffs filed this lawsuit, the Getty Defendants had still not returned the original and dated versions of the catalogue of the Torlonia Sculptures and are admittedly in communications with the Torlonia family about exhibiting the Sculptures. Motion p. 1.[17] Contrary to the Getty Defendants' claims, the Complaint alleges they have violated the DTSA since its enactment. Compl. ¶ 139.

***Claims on Behalf of Regulus.*** Plaintiffs have pled plausible claims on behalf of Regulus. The Complaint specifically alleges that Regulus helped facilitate the proposed transaction with the Getty Defendants at least as early as November 8, 2013 and that Regulus's involvement included guidance regarding the deal structure for the proposed transaction. Compl. ¶ 70. From that point in the Complaint, it refers to Electrum, Phoenix,[18] and Regulus collectively as

---

[17] "The Getty has had communications with the Torlonia family and representatives of the Italian government about the possibility that the Getty … might someday serve as one of several exhibition venues if the Collection ever goes on tour."

[18] "Phoenix," as used herein, means and refers to Plaintiff Phoenix Ancient Art, S.A.

"Plaintiffs" whenever appropriate and only identifies an individual Plaintiff to the extent an allegation or claim does not apply to all of them. Nothing prohibits Plaintiffs from collectively pleading their claims where the Getty Defendants' wrongful conduct harmed all of them. *See, generally,* Fed. R. Civ. P. 8; *Perry v. City of N.Y.*, No. 13-Civ.-1015 (JMF), 2013 WL 6641893, at *4 (S.D.N.Y. Dec. 17, 2013) (finding separate statements for each plaintiff unnecessary where plaintiffs pled "with a sufficient degree of clarity"). Thus, all allegations are sufficient as to "Plaintiffs," which includes Regulus. To the extent the Getty Defendants object to Plaintiffs' collective pleading, the proper remedy (if any) lies in a motion for a more definite statement, not dismissal of one party's claims.[19] More specifically, like Electrum and Phoenix, Regulus had an advantageous business relationship with the Torlonia family and provided valuable services and trade secrets to the Getty Defendants benefit to facilitate the proposed transaction with the expectation of receiving compensation. *See, e.g.,* Compl. ¶¶ 70, 75, 99-104, 129-136. Like Electrum and Phoenix, Regulus has, and has properly brought, claims for intentional interference with an advantageous business relationship, fraud, unjust enrichment, unfair competition, conversion, and violation of the DTSA.

Plaintiffs have further pled a plausible claim for breach of third-party beneficiary contract for Regulus. "The third-party beneficiary concept arises from the notion that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay or perform." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 43 (1985) (internal quotes omitted). New York allows third parties to enforce a contract if "(a) recognition of the third party's right to performance carries out the intention of

---

[19] To be clear, Plaintiffs maintain that the Complaint is sufficient and proper under the pleading requirements of Fed. R. Civ. P. 8 and that the Complaint provides extensive detail and is not so vague or ambiguous that Defendants cannot reasonably respond.

the direct parties to the contract, and (b) the promise intends to give the third party 'the benefit of the promised performance.'" *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989). New York does not require the third party be specifically mentioned in the contract, but the parties' intent to benefit a third party "must be shown on the face of the agreement." *Id.* at 733; *see also Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662-63 (2d Cir. 1996).

The NDNCA anticipates the involvement of third-parties—it defines "Confidential Information" to include "information disclosed to a party by third parties at the direction of either Electrum or the Undersigned." NDNCA, p. 1. Thus, the NDNCA shows intent to afford third-parties and their information the same confidentiality protections that the parties to the contract enjoy, if such information is disclosed under the NDNCA. Regulus disclosed confidential information to the Getty Defendants under the NDNCA at Electrum's direction as part of Plaintiffs' efforts to facilitate a deal between the Getty Defendants and the Torlonia family. Compl. ¶¶ 70, 100-103, 150. The Getty Defendants knew Regulus had made that disclosure. *Id.* at ¶¶ 70, 150.  A provider of confidential information is a third-party beneficiary of an agreement to maintain such confidentiality. *See Newman & Schwartz*, 102 F.3d at 662-63. Recognizing Regulus' right to enforce the NDNCA therefore carries out the contract's intent to protect third-party information. Plaintiffs have properly stated a claim for Regulus.

***Claims Against Potts.*** Plaintiffs have further sufficiently pled plausible claims against Potts for intentional interference, fraud, unfair competition, and conversion. Under New York law, "'a corporate officer who participates in the commission of a tort may be held individually liable, *regardless of whether the officer acted on behalf of the corporation in the course of official duties* and regardless of whether the corporate veil is pierced.'" *Peguero v. 601 Realty*

*Corp.*, 873 N.Y.S.2d 17, 2 (1st Dept. 2009) (emphasis in original) (quoting *Espinosa v. Rand*, 806 N.Y.S.2d 186, 186 (1st Dept. 2005)). Courts have held that corporate officers can be held liable in their individual capacities for fraud, *Polonetsky v. Better Homes Depot*, 97 N.Y.2d 46, 55 (2001) ("In actions for fraud, corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally"); unfair competition, *W. Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc.*, 761 F. Supp. 1041, 1054 (S.D.N.Y. 1991) (permitting claim for unfair competition against officer who caused and/or participated in the competition); and conversion, *Key Bank of N.Y. v. Grossi*, 642 N.Y.S.2d 403, 403 (3rd Dept. 1996) (corporate officers could be held liable for conversion).

The Complaint contains specific allegations setting forth Potts's personal involvement in the wrongful conduct sued upon, including but not limited to interfering with Plaintiffs' relationship with the Torlonia family, making misrepresentations to Plaintiffs, retaining and exercising control over property belonging to Plaintiffs, and engaging in a concerted effort to deprive Plaintiffs of the benefits of its property, skills, and labors. *See, e.g.*, Compl. ¶¶ 57, 61, 63, 69, 71, 93, 113, 127. Based on Plaintiffs' allegations, Defendants have no cogent argument that Potts was unaware of or uninvolved in tortious conduct. Accordingly, Plaintiffs have sufficiently pled plausible claims against Potts. [20]

### D.  In the Alternative, Request for Leave to Amend Complaint [21]

While Plaintiffs believe that each of their claims are properly pled and state a cause of action, to the extent the Court holds that any of Plaintiffs' claims are not properly pled, Plaintiffs should be granted leave to amend their pleadings. Plaintiffs have not previously amended and

---

[20] Plaintiffs acknowledge that Potts, as an agent of Getty, cannot tortiously interfere with a contract with Getty and withdraw that claim without prejudice.  However, Plaintiffs can maintain claims against Potts for interfering with Plaintiffs' relationship with the Torlonia family.
[21] Plaintiffs seek leave to amend in the alternative if any of their claims are held improperly pled.

"Rule 15(a) provides that leave to amend a complaint 'shall be freely given when justice so requires.'" *Harris v. Coleman*, 863 F. Supp. 2d 336, 345 (S.D.N.Y. 2012) (cites omitted). "It is the usual practice upon granting a motion to dismiss to allow leave to replead.'" *Id.*

Any amendment would not be futile. The Getty Defendants' legal arguments regarding Plaintiffs' inability to maintain non-contract causes of action are simply wrong. The remaining alleged deficiencies relate to the sufficiency of detail. Plaintiffs can address any factual deficiencies by providing greater detail regarding the Getty Defendants' wrongful conduct.

Because amendment would not be futile and justice requires that Plaintiffs be given the opportunity to remedy any defect in their pleadings, in the event this Court determines that any claims are not adequately pled, Plaintiffs conditionally request leave to amend their Complaint to remedy any deficiencies in their claims.

## IV.    CONCLUSION

The Getty Defendants' Motion should be denied. None of Plaintiffs' non-contract claims, whether tort or quasi-contract, is duplicative of their breach of contract claim, because they specifically seek relief for the Getty Defendants' wrongful conduct outside of the NDNCA. Further, so long as the validity, enforceability, and scope of the NDNCA remains unestablished, Plaintiffs are entitled to proceed under alternative theories of recovery.

Plaintiffs alleged specific facts evidencing the Getty Defendants' wrongful and tortious conduct towards them, including the Getty Defendants' misrepresentations of compensation, misappropriation of Plaintiffs' skills, services and goodwill, and ongoing wrongful control over Plaintiffs' property. The 210-paragraph complaint exceeds the permissible pleadings standards that require only that Plaintiffs show a plausible right to relief and certainly exceeds a speculative level.  The Getty Defendants' Motion fails in its entirety.

Dated: June 19, 2017                    Respectfully submitted,

                                        */s/ Andrew M. Howard*
                                        Elliot A. Hallak (EAH-5479)
                                        ehallak@harrisbeach.com
                                        HARRIS BEACH PLLC
                                        677 Broadway, Suite 1101
                                        Albany, New York 12207
                                        Telephone: (518) 427-9700
                                        Facsimile: (518) 427-0235

                                        Michael W. Shore
                                        mshore@shorechan.com*
                                        Alfonso Garcia Chan
                                        achan@shorechan.com*
                                        Andrew M. Howard
                                        ahoward@shorechan.com*
                                        SHORE CHAN DEPUMPO LLP
                                        901 Main Street, Suite 3300
                                        Dallas, TX 75202
                                        Telephone: (214) 593-9110
                                        Facsimile: (214) 593-9111

                                        Attorneys for Plaintiffs
                                        **PHOENIX ANCIENT ART, S.A.,
                                        PETRARCH LLC a/k/a ELECTRUM,
                                        and REGULUS INTERNATIONAL
                                        CAPITAL CORP.**

## CERTIFICATE OF SERVICE

        I hereby certify that on June 19, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and that all counsel of record are being served on this day via Notices of Electronic Fling generated by CM/ECF and in accordance with Local Civil Rule 5.2 of the Southern District of New York.

                                        */s/Andrew M. Howard*
                                        Andrew M. Howard